# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### WESTERN DISTRICT—PITTSBURGH 1857.

## The Pittsburgh and Connelsville Railroad Company *versus* Clarke & Thaw.

An original subscriber to the capital stock of a railroad company, incorporated subject to the provisions of the general railroad act of 19th February, 1849, is not discharged from liability for the amount remaining unpaid upon such stock, by transferring it to another, whether made in good faith or not.

Under the provisoes to the 7th section of the general railroad act, no valid transfer of stock can be made by a person indebted to the company, without the consent of the board of directors, and then no such transfer of stock will discharge the owner of it from any liability theretofore incurred.

The liability to pay for the amount of stock subscribed, is an indebtedness within the meaning of the act, although the instalments have not been called in at the time of the transfer. It is *debitum in presenti solvendum in futuro*.

A transfer of stock by a person so indebted, without the action of the board of directors, is a nullity; and such consent must be evidenced by a recorded resolution of the board, and cannot be proved by parol, unless the written minute has been lost or destroyed.

In ordinary transactions between a corporation and strangers, the authority of agents, and the existence of contracts, may be implied from circumstances, or where the assent of the board is required by a by-law; but where the charter grants a power, the mode prescribed for its exercise must be strictly pursued.

The clause in the act, which subjects the assignee of the stock to the disadvantages and liabilities of a member of the corporation, in the same manner the original subscriber would have been, are intended to fix the extent of the assignee's liability, and not to release that of the assignor.

ERROR to the District Court of *Allegheny county*.

This was an action of *assumpsit* by The Pittsburgh and Connelsville Railroad Company against Clarke & Thaw, to recover the balance due upon a subscription of one hundred shares to the capital stock of the company. On the 24th March, 1849, an Act

(146)

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

of Assembly was approved, authorizing commissioners to open books, receive subscriptions, and organize a company, subject to all the provisions of the general railroad law, approved on the 19th February of the same year, the capital stock to consist of sixteen thousand shares of $50 each. Under this act Clarke & Thaw subscribed the one hundred shares set forth in the declaration, and paid five dollars per share. The company was organized on the 21st August, 1851, and Thomas S. Clarke, one of the defendants, was elected a director, and continued to act in that capacity until the 1st of May, 1854, when he resigned.

The defendants pleaded payment, and on the trial in the court below, gave in evidence the following letter, to the admission of which the plaintiffs by their counsel excepted:—

" *To the President and Directors of the Pittsburgh and Steubenville Railroad.*

" I desire to have transferred to me eighty shares of the stock standing in the name of Clarke & Thaw, eighty shares of the stock standing in the name of Henry Graff, eighty shares of the stock standing in the name of William Bingham, eighty shares of the stock standing in the name of Hays & Black, and do therefore request that authority be given to the secretary to make such transfer.

"EDWIN M. STANTON.

" Pittsburgh, September, 1851."

And that afterwards, on the 25th May, 1852, the eighty shares were transferred, on the transfer book of the company, to Mr. Stanton. The defendants also proved that Stanton was a man of means, and of ability to pay.

The plaintiffs then offered to prove that after the date of the foregoing letter, the defendants continued to exercise acts of ownership over the stock up to the time and after the transfer on the books, for the purpose of disproving the existence, or the revocation of the pretended arrangement with Stanton. This offer was rejected, and exception taken by plaintiff.

They also offered to prove that the letter was not presented to the board of directors, and when presented to the treasurer, without the knowledge of the board, was withdrawn and concealed. This was also rejected by the court, and a bill sealed at the instance of plaintiff's counsel.

The plaintiff further offered to prove that, after the date of the transfer to Stanton, the defendants suffered themselves to be reported to the mayor of the city of Pittsburgh as holders of one hundred shares of stock, for the purpose of procuring a subscription by the said city of $250,000 stock in the company. This was also rejected.

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

They again offered to prove, by the minutes of the company in the custody of the secretary, that Clarke, one of the defendants, attended the meetings of the board of directors from 17th September, 1851, till June, 1852, and that during that time Stanton was reported as a defaulting stockholder, on his own original subscription, of one hundred shares, and that he refused to pay for the same, and that he was paid for taking the stock, instead of paying for it.

The latter part of the offer, that he was paid for taking the stock, was admitted, but the other was overruled, and an exception taken by plaintiff's counsel.

They finally offered lists of stockholders, made and certified respectively, 8th June, 1852, and 27th September, 1852, the first by the president and treasurer, and the latter by the treasurer, with his affidavit thereto, in which the defendants were set down as the owners of one hundred shares, with $500 paid thereon, and that Clarke was one of the directors at the time, and had actual knowledge that they were reported as debtors to the company for the balance due on such stock, to show that the defendants regarded themselves as the owners of the stock, and that the transfer to Stanton was not made *bonâ fide,* and that the arrangement for the transfer to him was revoked and abandoned. An objection to its admission was sustained, and the plaintiffs took an exception.

The plaintiff's counsel propounded the following points:—

1. That the transfer of stock held by an original subscriber in a railroad company, indebted to said company on such subscription, is invalid, without the consent of the directors as a board, for the purpose of discharging the liability arising from such subscription.

2. The act of the treasurer suffering such transfer to be made, is no evidence of the assent of the board of directors, and such assent can only be evinced by some corporate action.

3. That no transfer of stock shall have the effect of discharging any liability or penalty incurred by the owner thereof prior to said transfer, and that stock subscribed for and not paid up, although not due or called for, is such a liability as would not be discharged by such a transfer.

4. That the letter of E. M. Stanton is an agreement to receive the transfer of the stock within a reasonable time, and that a transfer after the lapse of eight months, without notice to transferree, is not a reasonable time, and he was not bound to accept it without renewed consent.

5. That the letter of said Stanton, requesting the transfer of the stock mentioned therein, is not in the nature of an abiding contract, but the mere expression of a willingness to accept the stock, *at that time,* and therefore revocable, and that the jury

may presume, from the lapse of time, that the said request was revoked.

6. That the withholding or suppression by the transferrors of the writing signed by E. M. Stanton, and the retention of said writing in their possession, so that the directors of that period and their successors were not furnished with it as evidence of the liability of Mr. Stanton, had the effect of invalidating said transfer from him, if otherwise formal, and of estopping them from setting up said transfer as a defence.

7. That the offer by E. M. Stanton to accept eighty shares from each of four persons (in all 320 shares), was not fulfilled or acceded to by the transfer by three persons, of eighty shares each (in all 240 shares), and therefore not binding on Mr. Stanton, without fresh acceptance; and the omission to transfer all requested invalidates any transfer of a portion.

The court below (HAMPTON, P. J.) summed up the instructions to the jury as follows :—

" I am not aware that the question now before the court has ever arisen under this Act of Assembly. The case of the West Phil. C. C. *v.* Innis, 3 *Whar.* 206, contains a principle which favours the views we entertain in this case. We are not, however, without direct authority on the general question elsewhere. In *An. & A. on Cor.* § 534, the principle is broadly laid down as follows : ' When an original subscriber to the stock of an incorporated company, who is bound to pay the instalments on his subscription, from time to time, as they are called in by the company, *transfers* his stock to another person, such other person is substituted, not only to the rights, but to the obligations of the original subscriber : and *he* is bound to pay up the instalments called for after the transfer to him. The liability to pay up instalments is shifted from the outgoing to the incoming shareholder. A priority is created between the two by the assignment of the one, and the acceptance of the other; and also between them and the corporation, for it would be absurd to say, upon general reasoning, that if the original subscribers have the power of assigning their shares, they should, after disposing of them, be liable to the burdens which are thrown upon the stock.' And in support of this doctrine many cases are cited in a note under this section.

" We instruct you, therefore, as matter of law, that the company had power to consent to this assignment, so as to release these defendants from the unpaid balance on the eighty shares of stock transferred to Mr. Stanton.

" The amount of this ruling is,—

" 1. The company had power to consent to this transfer, and release the defendants from all liability for the balance remaining unpaid on those eighty shares of stock so assigned.

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

" 2. The law presumes that the company did consent to the transfer.

" 3. The law also presumes that Mr. Stanton consented to and accepted the assignment.

" These three are questions of law for the determination of the court, and we have ruled them all in favour of the defendants.

" But one question remains to be disposed of, which is admitted to be the only question of fact for the jury to pass upon, and that is, whether the transfer was *bonâ fide*, made in the ordinary course of business. If you should be of opinion that this transfer was so made, then the plaintiffs are not entitled to recover against these defendants any portion of the balance unpaid on the eighty shares assigned to Mr. Stanton. In that event, you will find for the plaintiffs the amount agreed upon by counsel as being yet due on the twenty shares of stock still owned and held by the defendants. But if you find this fact otherwise, you will find for the plaintiffs the amount of their claim. The plaintiffs' counsel have presented several points, but as the general charge, it is believed, covers all the law of the case, it is deemed unnecessary to answer them in detail."

The jury found for the plaintiffs $723.27, being the balance, with interest, due on the twenty shares not transferred.

The plaintiffs sued out this writ, and assigned for error the admission and rejection of the evidence as stated in the bills of exception, and the ruling of the court on the points of law.

*Craft* and *G. P. Hamilton*, for plaintiff in error.

*A. W. Loomis*, for defendant in error.

The opinion of the court was delivered by

LEWIS, C. J.—This is an action to recover the instalments due on a subscription to the stock of the Pittsburgh and Steubenville Railroad Company. The plea of payment admits the original liability of the defendants, but the defence is that eighty shares of the number originally subscribed, were transferred to Edwin M. Stanton, on the 25th May, 1852. It is not necessary, in this case, to decide the general question whether a transfer of stock will relieve an original subscriber from his express engagement to pay the instalments, when required by the directors. Our duty will be performed when we give a construction to the 7th section of the act of 19th February, 1849. That section directs certificates to be delivered to the persons entitled to receive them, "which evidences of stock shall be transferrable at the pleasure of the holder, in a suitable book to be kept by the company for that purpose," "in the presence of the president or treasurer, subject, however, to all payments due or to become due thereon; and the

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

assignee or party to whom the same shall have been so transferred, shall thereupon be a member of said corporation, and have and enjoy all the *immunities*, privileges, and franchises, and be subject to all the liabilities, conditions, and penalties incident thereto, in the same manner as the original subscriber would have been : *Provided*, that no certificate shall be transferred so long as the holder thereof is *indebted* to said company, *unless the board of directors shall consent thereto :* And provided, that no such transfer of stock shall have the effect of *discharging any liabilities or penalties theretofore incurred by the owner thereof*." Taking these two *provisoes* together, they very plainly declare that a stockholder who is "indebted" to the company, shall not transfer his stock without the "consent" of the "board of directors," and that such transfer, *even with the consent of the board*, shall not discharge "any *liabilities* or penalties theretofore incurred by the owner thereof." Is an original subscriber who has bound himself in writing to pay $50 per share, but who has only paid $5 per share on his subscription, "*indebted*" to the company within the meaning of the act? Why should this question receive a negative answer? His engagement to pay the money is as much a debt as any other engagement for the payment of money. A debt may be contracted for stock in a railroad company as readily as for anything else. It is true that the debt is payable by instalments, when required from time to time, by the directors. But it is none the less a debt on that account. It is *debitum in presenti solvendum in futuro*. It is a *present* debt payable at a *future* day. It is well settled that the lien given by statute to a corporation upon the shares of stockholders "*indebted*" to it, extends to all debts whether payable presently or at a future time, except where the statute limits the lien to debts actually due and payable, and that a stockholder indebted to the corporation, although the debt may not be due, cannot transfer his stock without the consent of the corporation : Rogers *v.* Huntingdon, 12 *S. & R.* 77 ; Grant *v.* Mechanics' Bank of Philadelphia, 15 *S. & R.* 140 ; Sewall *v.* Lancaster Bank, 17 *S. & R.* 285. It is very clear that the defendants, at the time of the alleged transfer of their stock, were "indebted" to the company to an amount nearly equal to the whole of their subscription. They had therefore no right whatever to transfer their stock without the consent of the board of directors. It is true that as between them and the purchaser, if the latter thought proper to contract for a contingent or uncertain interest, the transfer might be good for some purposes : 8 *Pick.* 90 ; 9 *Pick.* 202 ; 2 *Cowen* 770. But it passes no title to the stock, and confers no "privileges, immunities, or franchises" whatever, upon the purchaser. The consent of the board of directors is in itself the originating act in the change of title, and does not merely operate to perfect the conveyance previously begun : Marlborough Manufacturing

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

Company *v.* Smith, 2 *Conn. Rep.* 579; Newton *v.* Bridgeport Turnpike Company, 3 *Conn. Rep.* 544; Oxford Turnpike Company *v.* Bunnell, 6 *Conn.* 552. So long as the stock remains unpaid, the corporation has a right to refuse to receive new members in place of the original adventurers. Until the stock is fully paid up, and the stockholders otherwise free from debt to the company, they have no right whatever to introduce strangers into the company in their places. A right which depends upon the consent of others is no right at all. The transfer to Mr. Stanton was therefore of itself a nullity. An attempt was made to give it vitality by parol evidence from which the consent of the board of directors was to be inferred by the jury. But there is no evidence tending to show that the question was ever presented to the consideration of the board, or that any action was taken by the board in regard to the transfer. In ordinary business transactions between a corporation and strangers, the authority of agents and the existence of contracts may be implied from acquiescence and other circumstances. So, where the assent of the board is required by a by-law only, the execution of the by-law may be modified by the *practice* of the corporation: Insurance Company *v.* Smith, 1 *Jones* 126. But where the act of incorporation grants a power, the mode prescribed by the statute for its exercise must be strictly pursued: 5 *Barb. Sup. Court Rep.* 649; 2 *Cranch* 127. The question here is, whether one member of a corporation has been legally substituted for another. The title of the original stockholder was established by written evidence, and could have no legal existence without it: Thames Tunnel *v.* Sheldon, 6 *B. & Cress.* 341. The title of the substitute must be shown by evidence of the same character. It is the duty of the directors to keep minutes of their proceedings, and the proper evidence of their assent to a transfer is a recorded resolution adopted when the board was in session. Where the transfer is made by a director, it ought further to appear that the resolution of assent was carried without his vote. If the resolution was adopted and entered on the minutes, the loss or destruction of the entry might be supplied by parol proof. But in no other case can parol evidence be received to show that an assignee has been admitted as a member of the corporation, in the place of the assignor. There was no legal evidence of the assent of the board of directors to the transfer, and therefore no legal evidence of a valid transfer of the stock. If there had been, we do not see how the defendants can claim to be discharged by it from "liabilities" previously incurred. Their subscription to the stock of the company, created a *liability* to be called upon for payment in such instalments as the directors required. Conceding that it was not an obligation for *present* payment, and supposing, for a moment, that it was not strictly a *debt*, it was certainly a "liability," which is a word of more extensive signification than "debt." The Act of Assembly is express

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

in its direction that a transfer, even with the assent of the board, "shall not have the effect of discharging any *liabilities* or penalties theretofore incurred by the owner" of the stock. We see no reason for restricting this *proviso* to "liabilities," which had become *due* and *payable* before the transfer. It is sufficient to bring a "liability" within the *proviso* that it had been "incurred" by the owner before the transfer. It is not necessary that it should also have become due and payable.

The clause which declares that the stock transferred shall be "subject to all payments *due* or *to become due* thereon," makes no such discrimination. The object of the legislature was to secure *all* liabilities, without respect to the time when they would be at maturity; and neither the creation of a lien on the stock transferred, nor the personal liability imposed on the assignee, can have the effect of releasing the original subscriber from his express contract to pay the money. It is a familiar principle that a creditor, by taking any number of securities for a pre-existing debt, does not thereby release the original obligation. To produce that effect, there must be an agreement to accept the new securities in satisfaction of the prior indebtedness. Nothing of that kind can be inferred from the language of the act. The clause which gives to the assignee the advantages, and subjects him to the disadvantages, of a member of the corporation "in the same manner as the original subscriber *would have been*," was intended to fix the extent of the assignee's liability; and not to limit or release that of the assignor. The words "would have been" are therefore altogether insufficient, in the connexion in which they stand, to perform the important office of releasing the original subscriber from his contract. Before the transfer he would have been liable to the seizure of his dividends and the forfeiture of his stock, as well as to an action on his contract. By the transfer, this liability was changed so far as regards the lien on his stock, and he remained liable to an action on his contract alone. But the new stockholder is made liable to the *lien* as well as to the *action*, "in the same manner as the original subscriber would have been" if he had made no transfer. This is what we understand this part of the section to mean. If, however, the meaning were doubtful, we are very clear that there is nothing in the language used which should control the clear declaration contained in the last proviso, that "no such transfer shall have the effect of discharging *any* liabilities or penalties theretofore incurred by the owner" of the stock.

This view of the case renders it unnecessary to inquire into the motives for making the transfer. Whether made in good faith or not, the original subscriber is not thereby released from his contract.

As the evidence stands on the paper-book, the defendants have

[Pittsburgh and Connelsville Railroad Company *v.* Clarke & Thaw.]

no defence whatever, except to the extent of their payments made. If the case should wear the same aspect on a second trial, the evidence relative to the other grounds of defence, ought to be rejected, and a *peremptory* direction given to the jury in favour of the plaintiff.

Judgment reversed and *venire facias de novo* awarded.