## COMMONWEALTH v. LEHIGH AVE. RY. CO.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT
OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 5, 1889—Decided October 7, 1889.
[To be reported.]

(*a*) The Lehigh Ave. Ry. Co., incorporated by act of December 18, 1873, P. L. (1874) 458, with an authorized capital of $1,000,000, was given power to borrow money not exceeding in amount "one half of the par value of the capital stock."    Only ten per cent, or $100,000, of its capital was paid in, when it resolved to issue its bonds for a loan of $250,000.

(*b*) A bill in equity was filed by the commonwealth to enjoin the issue of said bonds, as contravening § 3, act of May 7, 1887, P. L. 94, enacted to enforce against railroad corporations the provisions of § 7, article XVI. of the constitution, providing that "no corporation shall issue stocks or bonds, except for money, labor done, or property actually received," etc.

1. Inasmuch as there was no pretence that the railroad company did not intend to receive full value for the proposed bonds, if issued, no question was raised as to the applicability of the act of May 7, 1887, or of the provision of the constitution referred to, which the said act was intended to enforce.

2. The words, "the par value of the capital stock," used in the incorporating act, however, were to be construed to mean capital actually paid up, and not authorized capital; wherefore, it was not error to enjoin the issue of bonds to an amount greater than $50,000, the one half of the capital paid in to the company.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 27, 37 May Term 1889, Sup. Ct.; court below, No. 115
Equity Docket, C. P.

On October 15, 1888, a bill in equity was filed by the Com-
monwealth of Pennsylvania, against the Lehigh Avenue Rail-
way Company of Philadelphia, Joseph T. Bunting and J. McK.
Barron, in which it was in substance averred:

1. That the defendant, the Lehigh Avenue Railway Com-
pany of Philadelphia, was a corporation of the state of Penn-
sylvania, organized and existing pursuant to the act of De-
cember 18, 1873, entitled "An act to incorporate the Lehigh
Avenue Railway Company of Philadelphia," P. L. (1874) 458;
and that Joseph T. Bunting was president, and J. McK. Bar-
ron was secretary, of said company.

2. That the capital stock of the said company consisted of
twenty thousand shares of fifty dollars each, upon which shares
the sum of five dollars per share, and no more, had been called
and paid, either in money, labor done, or property received, on
account of the whole of said capital stock.

3. That the stockholders and board of directors of said com-
pany had passed resolutions authorizing the issue of bonds of
the defendant company, secured by mortgage, to the amount of
$250,000, and were about to issue the same in contravention
of § 3 of the act of assembly entitled " An act to enforce
against railroad corporations the provisions of § 7 of article
XVI. of the constitution:" Act of May 7, 1887, P. L. 94.

4. That upon the organization of the defendant company,
twelve thousand shares of stock were subscribed in December,
1873, and five dollars per share paid thereon; that in February,
1888, eight thousand shares of increased stock were subscribed
for and five dollars per share paid thereon; and that the said
company had constructed, and was about to operate, a street
passenger railway in the city of Philadelphia.

The bill prayed: 1. For discovery. 2. For an injunction to
restrain defendants "from issuing or disposing of any of said
bonds, or from evading by any device the true intent and
meaning of the said act of assembly of May 7, 1887." 3. For
further and other relief.

The defendants filed an answer in which they admitted the averments of fact in the bill, denying, however, that the proposed issue of bonds would be in contravention of § 3 of the act of May 7, 1887, P. L. 94, for the reasons following:

" 1. The third section of said act of May 7, 1887, cannot be lawfully applied to the corporation defendant, which was incorporated on December 18, 1873.

" 2. The third section of said act, under the provisions of which section the bill in this case is filed, is in violation of § 3, article III., of the constitution of 1874, in that the subject matter of the said third section is nowhere mentioned or indicated in the title of said act.

" 3. The said third section of the act relates to railroad corporations only, and was not intended to apply to a passenger railway company, such as the defendant corporation is, whose line of railway is located on a public street of the city of Philadelphia, and to be used solely for the purpose of carrying passengers and not freight, as appears by § 4 of the charter of the company defendant, which sets forth that " no freight or burden trains or locomotive shall be permitted to pass over said railway."

The case was set down for hearing on bill and answer, and on January 25, 1889, the court, SIMONTON, P. J., filed an opinion, which, after stating the pleadings, proceeded:

Defendant claims that it is authorized to make and issue said bonds by § 3 of its charter, which is made an exhibit to plaintiff's bill, and is as follows:

" Section 3. The said company shall have the power and authority to borrow money in any sum or sums not exceeding in amount one half of the par value of the capital stock, at a rate of interest not exceeding seven per centum per annum, and to secure the re-payment of the same and the interest thereon, to give bonds secured by a mortgage of and on the said railway and the corporate rights and franchises guaranteed by this act, which principal moneys shall be payable at such dates and times as the board of directors may deem advisable."

There being no controversy as to facts, the case was heard on bill and answer.

We do not understand that there are any facts or intentions

alleged to exist in this case which would bring it within the terms of the prohibition of § 7, of article XVI., of the constitution, which is, that "no corporation shall issue stocks or bonds except for money, labor done, or property actually received." There is no pretence that defendant does not intend to receive full value for the bonds, if issued. We are, therefore, not required to determine whether this provision of the constitution would under any state of the facts apply to this defendant, incorporated before the constitution was adopted; that question is not in the case. And it is, perhaps, not easy to understand how defendant, if it has not rendered itself obnoxious to the provisions of the constitution, can be affected by the terms of an act of assembly passed to enforce those provisions, and the title to which states no other purpose. We are therefore, of the opinion that its rights must be limited and determined by the terms of its charter, and not by those of the act of May 7, 1887.

It is authorized by § 3 of its charter, already quoted, "to borrow money in any sum or sums, not exceeding in amount one half of the par value of the capital stock;" and, as we conceive, the real question in this case is involved in the proper construction of this provision. Defendant contends that in the phrase "one half of the par value of the capital stock," the words "capital stock" mean the authorized and not the paid up capital; and that, therefore, as it has an authorized capital of twenty thousand shares of the par value of fifty dollars each, or one million dollars, it is empowered by its charter to issue bonds in any sum not exceeding one half that amount, or five hundred thousand dollars, notwithstanding the fact that its paid up capital is only five dollars per share, or one hundred thousand dollars; while for the commonwealth it is contended that it can issue bonds only to the amount of one half its paid up capital, or fifty thousand dollars.

The charter of the company defendant contains another section in which the phrase, "par value of the capital stock," occurs as follows:

"Section 10. That the said company shall pay annually into the treasury of the city of Philadelphia, for the use of said city, whenever the dividends declared by said company shall exceed six per centum per annum on the par value of the capi-

Opinion of Court below.

tal stock thereof, a tax of six per centum on such excess over six per centum on the par value thus declared."

Several cases have occurred in which the question arose between passenger railway companies, whose charters contained a similar provision, and the city of Philadelphia, whether the companies were liable to tax as soon as their dividend exceeded six per centum on their paid in capital, or, not until they exceeded six per centum on their authorized capital. These cases all called for a construction of the words, capital stock, as thus used in the charters, and they have uniformly been construed to mean paid in capital stock.

—Quoting from the opinion delivered by Mr. Justice CLARK, in Philadelphia v. Ridge Ave. Ry. Co., 102 Pa. 190, as the latest case on the subject, the opinion concluded:

This places the construction of § 10 of defendant's charter beyond controversy, unless the fact that the phrase here is " par value of the capital stock," while in all the cases cited it was simply " capital stock," ought to lead to a different construction. We do not think it ought. The words, par value, do not affect the reasons for the construction. If "capital stock " means actual capital, the " par value " meant must be the par value of the actual capital, and not the par value of " mere moonshine," as nominal capital is styled by Justice THOMPSON in Citizens Pass. Ry. Co. v. Philadelphia, 49 Pa. 256. But if the phrase " par value of capital stock," in § 10 of defendant's charter, is to be construed par value of actual capital, we see no escape from the conclusion that the same words in § 3 must have a like meaning. The same reasons exist for such a construction in the one case as in the other. It is as much against the policy of the law to permit bonds to be issued upon the security of " mere moonshine," as it is to allow taxation to be evaded by making it the basis of dividends.

We, therefore, arrive at the result that the company defendant has authority to issue bonds to the amount of fifty thousand dollars, and no more, and that an injunction must issue to restrain it from issuing any greater amount, until the court is satisfied that is has acquired additional actual capital stock.

A decree may be prepared in accordance herewith.

—A final decree was then entered: " [That the corporation defendant is authorized by its charter, embodied in the act of

assembly approved December 18, 1873, to borrow money in any sum or sums not exceeding in amount one half of the par value of the capital stock thereof; that by the phrase " one half of the par value of the capital stock " is intended the actual paid up capital stock] [2] and [that the actual paid up capital stock of the said company amounts to five dollars per share, or one hundred thousand dollars; that the said company is authorized to borrow and issue bonds to the amount of fifty thousand dollars and no more;] [3] [that a perpetual injunction issue, restraining the defendant, its officers, directors, servants, and agents from borrowing any more than the sum of fifty thousand dollars, and from issuing bonds or other securities to secure any greater amount;] [4] that this decree is subject to be modified by the further order of this court whenever it shall appear by satisfactory evidence that the defendant corporation, by reason of having an actual paid up capital stock in excess of the present amount of one hundred thousand dollars, is entitled, by reason thereof, to borrow a sum in excess of the sum of fifty thousand dollars."

Thereupon, the defendant company took the appeal to No. 27, specifying that the court erred:

1. In not dismissing the plaintiff's bill.

2-4. In the portions of the decree embraced in [ ] [2 to 4]

The commonwealth took the appeal to No. 37, specifying that the court erred in not deciding:

1. That the defendant company was subject to the provisions of § 7, article XVI. of the constitution, and the act of May 7, 1887.

2. That the defendant company was not authorized to borrow and issue bonds to any amount, until the amount of its authorized capital stock had been fully paid up, either in money, labor done, or property received.

3. That the proposed issue of bonds was a fictitious issue, within the meaning of § 7, article XVI. of the constitution.

*Mr. W. C. Hannis,* for the Lehigh Ave. Ry. Co.:

1. It is only in cases where the meaning of a statute is doubtful, that courts are authorized to indulge in conjecture as to the intention of the legislature, or to look to consequences in the construction of a law. When the meaning is plain and

unambiguous, the act must be carried into effect, or the court would be assuming legislative authority. The rule is to read statutes according to the most natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operations : Potter's Dwarris, 274, notes 3, 4; note 6, 184. If the meaning of a statute is plain and unambiguous, it is nothing to the point that it may not be wise legislation. That is for the legislature, and not for the courts.

2. Webster defines the word, par, thus: the value expressed on the face, or in the words of a certificate of value ; par value; nominal value. Worcester, thus: The original nominal price or full value, as of stocks ; stocks and the like are at par, when they sell for the nominal value ; above par, or below par, when they sell for more or less. " Presumptively, however, the nominal value is the true value of securities yielding and paying interest, and the legislature has therefore fixed the nominal value, or the par value, for the purpose of taxation : " Commonwealth v. Del. Div. Canal Co., 123 Pa. 623. The most accurate definition of " par value of capital stock," is the face value, or that sum fixed in the charter which each subscriber to stock may be compelled to pay to the corporation on his subscription. This is the natural and common meaning of the term, and it is so understood by the whole commercial world. Every certificate of stock has its par value engraved on its face, even though a much smaller amount is paid in.

3. To show that the legislature, in using these words, par value, meant the nominal or authorized value, we have examined and present a schedule of all the statutes passed by the legislature of 1873 wherein the words, par value, have been used; and it will be seen by a reference thereto, that the legislature invariably used the words, par value, nominal value, authorized value, and amount subscribed, as always meaning the same thing, to wit, the face value, and never used any of these terms to designate paid up value.

*Mr. William S. Kirkpatrick*, Attorney General (with him *Mr. John F. Sanderson*, Deputy Attorney General), for the commonwealth :

1. There is nothing in the language of § 3 of the act incor-

porating the Lehigh Avenue Railway Company, which secures to it the right to borrow money beyond the $50,000. Until the amount of capital the company is permitted to have, is paid in, it does not really have capital beyond such amount paid. It may never pay in more than a portion. The limit in the charter of twenty thousand shares of $50 each, gives it power to have capital to that extent. Whatever is paid in is its capital stock. All beyond does not exist and cannot be called capital stock. It is only the possibility of capital. Defendant is authorized to borrow an amount not exceeding one half of the par value of the capital stock. This does not secure to it the right to borrow in an amount exceeding such paid up stock.

2. Even if we consider that the corporation defendant was entitled to borrow $500,000, or any sum within that limit, whether it had paid little or all of the amount subscribed, the act of 1887, and the constitutional provision contained in § 7 of article XVI. of the constitution, are within the police or regulating power of the commonwealth, and the exercise of this power by a constitutional or statutory provision does not impair the obligation of a contract within the meaning of the federal constitution. The police power of the state is co-extensive with self protection, and is not inaptly termed " the law of overruling necessity: " Lake View v. Rose Hill Cemetery Co., 70 Ill. 192, (22 Amer. R. 71) ; Thorp v. Railroad Co., 27 Vt. 129 ; Commonwealth v. Alger, 7 Cush. 85 ; Powell v. Commonwealth, 114 Pa. 295 ; 2 Hare, Am. Const. Law, 766 ; Beer Co. v. Massachusetts, 97 U. S. 25 ; Mygler v. Kansas, 123 U. S. 623 ; Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383 ; 2 Morawetz on Corp., 2d ed., §§ 1070, 1078 ; Stone v. Railroad Co., 116 U. S. 345 ; Sinking Fund Cases, 99 U. S. 700.

3. The commonwealth claims that, even without the legislation of 1887, the proposed issue of bonds is directly forbidden by the constitution. Many of the provisions of the new constitution are mandatory upon the legislature, rather than operative directly upon persons and things. Others, however, have a legislative character and are positively and directly operative upon the subjects which come within the range of their language. Section 7, of article XVI. is one of these provisions,

so far as it provides that " no corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; " or that "all fictitious increase of stock or indebtedness shall be void." It has been repeatedly decided by this court that there is substantial identity between the capital stock of a corporation and its property and assets, and that the former represents the latter; that a tax upon the capital stock of a company is a tax upon its property and assets; and the capital stock of a company, in the view of the taxing acts, is to be regarded as equivalent to the property and assets of the corporation: Commonwealth v. Standard Oil Co., 101 Pa. 145.

4. The proposed issue of bonds is clearly within the prohibition of the act of May 7, 1887, even if the constitutional provision is not self-executing, and legislation is required to carry its provisions into effect. Such legislation is to be found in § 3 of the act referred to, providing that no railroad corporation of the commonwealth shall issue its bonds or other certificates of indebtedness until after the full amount subscribed of its authorized capital stock shall have been fully paid for, either in money, labor done, or property received, etc. The act is not unconstitutional, so far as § 3 is concerned. The title fairly embraces or tends to give notice of the subject of the act so as to lead to inquiry: Commonwealth v. Green, 58 Pa. 234; Blood v. Mercelliott, 53 Pa. 391; Yeager v. Weaver, 64 Pa. 424; Allegheny Co. Home's App., 77 Pa. 77; Mauch Chunk v. McGee, 81 Pa. 433. And the act includes equally passenger railway companies and steam railway companies: Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210.

### LEHIGH AVE. RY. CO.'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

The Lehigh Avenue Railway Company was incorporated by the act of December 18, 1873, with an authorized capital of one million dollars, divided into shares of fifty dollars each. The shares have been subscribed for, and the first payment of five dollars per share paid on them, making a total of one hundred thousand dollars actually paid. Upon this amount of money the business of the corporation was entered upon, and nothing further has been collected upon the subscription to the

capital stock. In 1888, the company, being in need of more money, decided to issue its bonds secured by a mortgage on its property and franchises for two hundred and fifty thousand dollars. This bill was filed by the attorney general to restrain the issuing of the proposed bonds on the ground that § 7 of article XVI. of the constitution, and the act of May 7, 1887, forbade it. The company denies that the act of 1887, or the provision of the constitution which it is intended to carry into execution, is applicable, and alleges that it has the right to issue the bonds under its own charter, the act of incorporation. Two questions are thus raised : First. Is the railway company authorized by the act of incorporation to issue the bonds proposed? Second. If so authorized, do the act of 1887 and the constitutional provision take away the authority so conferred?

The act of incorporation provides, in section third, that " the said company shall have the power and authority to borrow money in any sum or sums not exceeding in amount one half of the par value of the capital stock." The tenth section provides that " the said company shall pay annually into the treasury of the city of Philadelphia for the use of said city, whenever the dividends declared by said company shall exceed six per centum per annum on the par value of the capital stock thereof, a tax of six per centum on such excess." The first question presented is, what is the meaning of the words " par value of the capital stock," as used in the act of incorporation? The company contends that the par value of its stock is one million dollars, the amount of its authorized capital. The attorney general maintains that the par value is one hundred thousand dollars, the amount of capital actually contributed, as shown by the company's books, and that the right to issue bonds is limited to one half that amount by the act of incorporation.

The words, stock, and capital stock, may be defined as meaning the fund or property belonging to a firm or corporation, and used to carry on its business. This is contributed by those who embark in the business. The articles of co-partnership, or the charter of the corporation, fix the maximum amount of stock that may be issued, and this may properly be spoken of as the proposed or authorized capital of the company. When an organization is effected, subscriptions are made to the stock, by which the subscribers agree to take and pay for certain

sums or shares each. The total amount of stock thus taken constitutes the subscribed capital of the company. Some of these subscriptions may not be paid and may be uncollectible, but when the amount subscribed, or called for upon subscriptions, has been collected, so far as collection is practicable, the amount so gathered into the treasury constitutes the actual capital on which the business is undertaken. The amount paid by each subscriber measures his relative interest in the whole. As between himself and the corporation, or his fellow-subscribers, or the public, his share of the whole stock is fixed by the proportion which his actual contribution bears to the entire amount contributed by all who are associated in the enterprise. If, after the payment of one instalment on his subscription, a subscriber sells and assigns his stock, his assignee stands squarely in the shoes of his assignor, and takes no greater interest than was actually vested in his assignor at the date of the assignment. The general railroad law of 1849 provides that he to whom shares of stock are assigned shall take them "subject to all the liabilities, conditions, and penalties incident thereto, in the same manner as the original subscriber would have been ; provided, that no certificate shall be transferred so long as the holder thereof is indebted to said company, unless the board of directors shall consent thereto ; and provided, that no such transfer of stock shall have the effect of discharging any liabilities or penalties theretofore incurred by the owner thereof." In accordance with this provision, it was held, in the Pittsburgh & Connelsville R. Co. v. Clarke, 29 Pa. 146, that the liability of a subscriber to pay "for the amount of stock subscribed is an indebtedness within the meaning of the act, although the instalments have not been called in at the time of the transfer. It is debitum in præsenti, solvendum in futuro." It is clear, therefore, that, as between the assignor and assignee of shares, the assignment passes only the actual interest of the assignor as measured by what he has paid, and that the assignee takes subject to all unpaid instalments, whether called at the time of his purchase or not.

Does the corporation stand on better ground than its members? It claims the right to issue bonds because of its stock. We must inquire, therefore, first, what is the amount of its stock? And, next, what is the par value of a share of that

stock? We think the first of these questions is, in the light of the facts in this case, answered by repeated decisions of this court. Whether it be for the purpose of adjusting and paying dividends to stockholders, or of regulating the amount of taxes due to municipalities having the right and power to tax, the amount of stock actually paid is the capital stock of the company: Citizens Pass. Ry. Co. v. Philadelphia, 49 Pa. 251. Neither the cost of the road, nor the authorized capital can be made the basis of dividends or of taxation, but these must rest on the amount of capital stock actually paid in: Second & Third St. Pass. Ry. Co. v. Philadelphia, 51 Pa. 465; Philadelphia v. Philadelphia & Gray's Ferry Pass. Ry. Co., 52 Pa. 177; Philadelphia v. Ridge Avenue Ry. Co., 102 Pa. 190. The company appellant proposes to exercise a power and incur a liability upon the basis of its capital stock, and for this purpose, as for purposes of taxation or payment of dividends, its rights must be measured not by nominal or authorized capital, but by the actual amount of capital paid in. The issuing of certificates of stock to the subscribers does not add to the common stock in the treasury or business of the corporation, nor does it increase the interest of the individual stockholder. He takes his certificate when issued, subject to all the unpaid instalments of the subscription and the terms and conditions on which the subscription was made. Its value to him as between him and the corporation, is what he has paid upon it; no more, no less. That value may be increased or diminished in a commercial sense by the success of the business, the ability of the management, or other similar consideration, and such increase or decrease makes the market value greater or less than the amount he has paid upon it, as the case may be; but as between himself and the corporation or his fellow stockholders, the consideration of market value has no place. He must pay his subscription as calls are made, whether the venture prospers or fails. If the value of the stock is measured by what has been paid upon it, is the " par value " measured in the same manner when the right of the corporation to do a given act is to be settled?

The par value of the stock of this corporation for purposes of taxation or payment of dividends is, as we have already seen, the amount actually paid upon it, or one hundred thousand

dollars.  This is well settled by the cases we have cited, which hold that for the purposes enumerated the par value has no necessary relation to either the authorized or the market values, but is fixed by the amount actually paid, and is the equivalent or par of the value of the shares as shown by the stock account. The issuing of certificates · does not affect our question.  If issued, they cannot increase the money in the treasury, or confer any independent right on the stockholder.  They simply afford evidence of the extent of his interest in a more convenient form than the books of the company furnish, but leave him subject to all the liabilities resting on him before they came into his hands.  We see no good reason for distinguishing this case from the cases cited above, but regard it as substantially ruled by them.  The Lehigh Avenue Railway Company has received just one hundred thousand dollars from the subscribers to its stock.  So far as the paper-books advise us, this is all it has ever asked for in the more than fifteen years of its corporate life, and all it expects to receive.  The other nine hundred thousand dollars of authorized capital are uncalled and unpaid.  The par value of all its shares taken together is one hundred thousand dollars, because that is the sum paid upon them, the value they represent.  The par value of each share is fixed in like manner.  Its value is the equal, or par, of the corporate capital it represents, which is the amount paid upon it by the subscriber, or applied to it out of the earnings of the corporation.

It is argued that nominal value and par value are synonymous terms in the commercial vocabulary, and that the par value of the stock of this company is one million dollars, because that is the amount of its nominal or authorized capital. If this is so, the par value has not been affected by the payment of calls upon the subscriptions heretofore, and will not be hereafter, though the entire amount subscribed be actually paid to the treasurer.  Whether the amount paid in is ten per cent, or fifty, or one hundred per cent of the authorized capital, the par value must, according to this doctrine, remain the same. This overlooks the meaning of the word value, and the basis on which the idea of value rests.  The par value of a treasury note or bank bill is the sum named on its face, because the holder can demand and is entitled to receive that sum for it

from the government, or the bank by which it was issued. The same thing is true of notes, bonds, and negotiable instruments of all sorts. The maker cannot deny that he is indebted as he is represented in his note or bond, nor refuse to pay the exact sum he has promised to pay. In these cases the nominal and the par value are, prima facie, the same. The par value of a treasury note for one dollar is one dollar, because that sum in coin can be had for it. When it cannot be so exchanged it is said to be below par, because it is not redeemed at a price which is the par, or equal, of the promise on its face. But a certificate of stock in a railroad company is not a negotiable instrument, in either a legal or commercial sense. It stands in the hands of the subscriber for so much and no more than the amount actually paid upon it. In the hands of his transferee it stands for no more, but is held under the express provisions of the general railroad law, subject to the balance due upon the subscription, and all liens, penalties, etc., to which it was subject in the hands of the subscriber. Neither the seller nor the buyer can secure any greater interest as a holder of the stock than the sum actually paid entitles him to. Future calls must be paid as they are demanded, and the possession of the certificates is no defence against them.

How, then, is the equivalent, the par, in value of the stock in the hands of the holder to be ascertained at any given time? Very clearly by the books of the company, which show for what value it stands, what value it represents at that time. If but five dollars have been paid on a share, such share is subject to be called on for the remaining forty-five, if, as in this case, the nominal value of the share is fifty dollars, and the par value of such share is a sum which is equal to, or the par of, the value it represents, the five dollars actually paid into the treasury. It is clear that the certificate stands for no more than this to the holder, for he remains liable to be called on for the remaining forty-five. It stands for no more to the corporation, because it may compel payment of the sum standing due on the subscription, notwithstanding the certificate. When another call has been made and collected, the capital of the corporation will have been doubled. It will have two dollars to employ in its business where it now has one, and the par value of each share will have advanced to ten dollars, the exact

equal or par of what the share represents.   When the whole amount subscribed shall have been paid, the capital of the company will be one million dollars.   Its stock will represent its actual capital, and each share will have a par value equal to its nominal value.   The authorized or nominal value of the stock has remained the same from the beginning, viz., one million dollars.   The equivalent or par value of the stock has advanced as the calls have been paid, so as always to be the exact equivalent of the value received from the subscriptions made to it.   The market value has risen or fallen according to the estimate placed by the commercial world on the value of the business in which the corporation is engaged, the ability of its management, and the prosperity of its affairs.

We agree fully with the learned judge of the court below, that the case as presented on bill and answer raises no question under the act of 1887, or that provision of the constitution which it was intended to enforce.   The only question is whether the act of incorporation on which the company rests its right to make the mortgage and issue the bonds, and which is thus brought to our attention, does confer the authority which it is proposed to exercise.   We think it does not.   The company may issue its bonds under the act of incorporation for an amount equal to one half of the par value of its stock, or fifty thousand dollars, and no more, as the par or equivalent value of the stock is shown by the books of the corporation to be at this time.   It appears by the bill and answer that the stock is not paid up; that no profits have been applied to it; and that nothing has been paid upon it except five dollars per share.   This is all the corporation has, and for that reason it is all that its stock can represent.   Its aggregate value is equal to the aggregate of the sums received, or one hundred thousand dollars, and the value of each share is equal to the sum it stands for to the company and the stockholder, which is five dollars.   This is the value, or common stock, of which the certificates are the equal, equivalent, or par.

The industry of the learned gentleman, who represents the appellant, has enabled him to place before us extracts from a large number of acts of assembly, in which the words, par value, occur, for the purpose of showing that they have received a legislative construction in accordance with the views

presented by him in his argument. But these extracts do not show a uniform use of the words, as will be seen by an examination of some of them. The act of January 31, 1873, P. L. 110, provides that "no certificate of stock shall be issued by said association until the full amount of the par value of the same shall be paid in cash." Here the nominal and par values are confused, and the draughtsman evidently regarded them as one and the same. But there could be no par value in the stock in advance of organization and payment of something upon it, for there was nothing whatever in the hands or treasury of the corporation to be represented by it. The object of the provision was to require payment in full before certificates should issue, so that when issued the par value should be equal to the nominal value. The provision from the act of March 20, 1873, P. L. 320, is in these words: "That none of said bonds shall be sold for less than the par value thereof." This is a correct use of the words. The bonds of a corporation have, prima facie, an actual value exactly equal to their face or nominal value. The solvency of the obligor is to be presumed, and on that basis, like other negotiable instruments, its value is equal to, the par of, its face value, so that its par and nominal value are the same. It may go above or fall below its par in value by reason of extrinsic circumstances, but if none such occur its par value is its nominal value. Another example from the act of April 4, 1873, P. L. 519, is as follows: "Section 4. If calls are not paid the directors may forfeit and sell the stock, but not for less than par." Here the words are correctly used. Suppose that a stockholder has paid five dollars per share on shares with a nominal value of one hundred dollars each, and that for non-payment of the second call the directors proceed to forfeit and sell his shares. What now is the minimum price which the shares must bring? If the words, par value, are equivalent to face or nominal value, and the nominal value of the share is one hundred dollars, then it is clear that the directors must sell five dollars' worth of stock for one hundred dollars, or not sell at all. But if the words, par value, are understood in their proper legal sense, then this provision merely forbids the sacrifice of the shares of the delinquent for less than their actual cash equivalent, which is the sum paid upon them as shown by the books of the corporation.

must be remembered that we are speaking of the par value of stock that is conceded to be unpaid. The shares that are bought and sold in large blocks in the stock markets are, we presume, paid up shares. They certainly should be. In that case, nominal and par values are the same. It may fairly be presumed, that they would not be listed or dealt in in the market until they had been paid for in full, so that he who sold could confer an indefeasible title on the buyer. But there is no room for presumption in the case in hand. We have the fact on the record, that but one tenth of the nominal value has been paid. The corporation is the party. It has one hundred thousand dollars in its treasury, and no more; yet it asks us to hold that the par value of its stock is one million dollars, and permit it to exercise an important power on that basis. This we decline to do. The par value of its shares is measured by the money it has received upon them, and not by the broken promises of those who subscribed for them.

The decree of the court below is affirmed at the costs of the appellant.

Mr Justice MITCHELL dissented.

### COMMONWEALTH'S APPEAL.

OPINION, MR. JUSTICE WILLIAMS:

This was an appeal by the commonwealth from the decree of the court below in the case of the Commonwealth v. The Lehigh Avenue Railway Company. For reasons given in an opinion delivered at the present term, dismissing the appeal of the Lehigh Avenue Railroad Company from the same decree,

This appeal is dismissed and the decree affirmed at the costs of the appellant.