LONDON & LANCASHIRE FIRE INSURANCE COMPANY *v.* LUDWIG.

Opinion delivered June 15, 1908.

1. CORPORATION—FEE ON CAPITAL STOCK.—Under the act of May 13, 1907, providing that corporations seeking to do business in this State shall pay into the treasury fees proportioned to their capital stock, the term "capital stock" includes stock which has been subscribed but not paid, but not stock which has been authorized but not subscribed. (Page 585.)

2. RECOVERY OF ILLEGAL FEES—PARTIES.—A complaint by a corporation against the Secretary of State which alleges that it was forced by defendant to pay excessive fees as a condition of doing business in the State, and seeks to recover such excess, is defective in failing to

allege that such fees were paid to the defendant, and that they were not paid by him into the State treasury, as required by law. (Page 587.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The meaning of the term "capital stock" varies according to the context in which it is employed. Stock in the hands of a stockholder means his interest in the corporation, whether paid for or not; but the stock of a corporation itself is a term synonymous with capital. It means the assets which the company possesses, the amount that has been paid in by the stockholders, which constitutes the capital on which the company does business. 1 Sandf. Ch. 307; 15 Fla. 651; 68 Cal. 350; 83 Cal. 300; 83 Ill. 610; 52 Pa. St. 177; 18 Wis. 295; 16 Ind. 105; 102 Pa. St. 190; 72 Hun, 126; 76 Ill. 563; 129 Pa. St. 405; 106 N. Y. 100; 63 Vt. 183; 61 N. E. 346; 72 Fed. 22; 129 Pa. 405; 81 Cal. 378; 23 N. Y. 193; 1 Desty on Taxation, 353; 96 U. S. 455; 126 U. S. 427; 150 N. Y. 46; 154 N. Y. 101; 90 Cal. 131; 93 N. Y. 188; 75 N. Y. 216.

*William F. Kirby,* Attorney General, and *Dan'l Taylor,* assistant, for appellee.

1. See secs. 1 and 3 of act. It is not a taxing act, as contended by appellant, but one prescribing the conditions upon which foreign corporations may. do business in this State. The power of the State to prohibit foreign corporations from doing business within its limits, or to impose such conditions as it pleases for the privilege of so doing, is settled, and it lies not with appellant to question the wisdom, reasonableness, etc., of the terms prescribed, since it is not compelled to enter and accept them. 155 U. S. 648; 202 U. S. 246; 189 U. S. 1408; 205 U. S. 278.

2. The term "capital stock" has been given varied and divergent meanings, in accordance with the court's understanding of the particular statute under consideration. Capital stock means the entire number of shares authorized, while shares of stock indicate the ownership by individual stockholders. Purdy's Beach on Corp. § 183; *Id.* § § 184, 187. Capital stock is a sum

fixed by the corporate charter as the amount paid in or to be paid in by the stockholders for the transaction of the business of the corporation and for the benefit of the corporate creditors. Cook on Corp. § 8; 6 Cyc. 384; 56 N. J. L. 389; 95 Tenn. 639; 99 Ala. 1; 6 Conn. 89. See also Kirby's Dig. § 838; 95 U. S. 686; 201 U. S. 560; 90 Cal. 140. Capital and capital stock are used convertibly in 81 Cal. 378; 98 Ia. 737; 31 La. Ann. 475; 12 L. R. A. 762; 106 N. Y. 97; 63 Vt. 175; 16 S. Car. 525. But capital stock in its strict significance exists only nominally, and remains fixed, while the capital or capital property of a corporation varies in value. 30 Mo. 550; Purdy's Beach on Corp. § § 185, 187.

BATTLE, J. The London & Lancashire Fire Insurance Company sued O. C. Ludwig. The complaint in the case, omitting the caption, is as follows: ·

"The plaintiff states that it is a corporation which was duly organized under the laws of Great Britain in the year 1861, for the purpose, among others, of writing policies of insurance against loss by fire; and the defendant is at present the Secretary of State of Arkansas. That on the 25th day of March, 1905, and for a number of years prior thereto, it was conducting a part of its business within the State of Arkansas, and under its charter had the power to do so. That on the date last aforesaid it ceased to do business in the State, and since that time has done none. That during the time when it did business in the State it built up and established a profitable business, and on June 4, 1907, desiring to re-enter the State for the purpose of carrying on business, it applied to the defendant as Secretary of State for leave to file the documents required by an act entitled, 'An act to permit foreign corporations to do business in Arkansas, and fixing fees to be paid by all corporations'; that in connection with such application it tendered to the Secretary of State a copy of its charter, duly authenticated and certified as required by law, together with a statement of its assets and liabilities and the amount of its capital employed in this State, also designating its general office or place of business in this State, and naming an agent upon whom process may be served. It also offered to file with the Secretary of State a resolution adopted by its board of directors, consenting that service of

process upon any of its agents in the State, or upon the Secretary of this State, in any action brought or pending in the State, shall be valid service upon it, and it offered to pay to the Secretary of State at the same time the fees required by the said act to be paid. That the capital authorized by its charter is the sum of $15,000,000, of which $11,400,000 and no more has been subscribed, and of the amount so subscribed only ten per cent. has been paid up. That the Secretary of State declined to file the papers tendered unless the plaintiff would pay a fee based upon the authorized capital of $15,000,000 and declined to permit them to be filed upon the payment of a fee based upon the capital paid up or the capital subscribed, which was all that could be legally demanded. Plaintiff was entitled by the terms of its organization under the laws of the State to enter the State to do business upon compliance with the law. It had within the State many former customers and patrons who desired to renew their business relations with it, and with whom it desired to renew such relations. It could not do this without first filing the papers aforesaid, and in all respects complying with the act of the General Assembly. In order to enjoy this right, it was forced by the demand of the Secretary of State to pay $3706 in fees when but $306 was demandable, being $3400 fees in excess of what was due from it under the terms of the said act, and it made such payment under protest and with notice that it did so merely as a means of enjoying its right to do business within the State. By reason of the premises, the plaintiff says that an action has accrued to it to recover of and from the defendant the difference in the amount paid by it and the amount which it was required to pay under the terms of the said act, towit, the sum of $3400.

"Wherefore it prays judgment against the defendant in the sum of $3400 with its costs."

The defendant demurred to the complaint, which the court sustained, and, the plaintiff refusing to plead further, dismissed the action; and plaintiff appealed.

Section 3 of the act entitled, "An act to permit foreign corporations to do business in Arkansas and fixing fees to be paid by all corporations," approved May 13, 1907 (Acts 1907, p. 744), is involved in this action. It is as follows: "That all corpora-

tions hereafter incorporated in this State and all foreign corporations seeking to do business in this State shall pay into the treasury of this State for the filing of said articles [articles of incorporation or association] a fee of $25.00 where the capital stock is $50,000.00 or under; $75.00 where the capital stock is over $50,000.00 and not more than $100,000.00; and $25.00 additional for each $100,000.00 of capital stock."

The question is what is meant by capital stock?

In *Commercial Fire Insurance Co.* v. *Board of Revenue of Montgomery County,* 99 Ala. 9, Chief Justice Stone, delivering the opinion of the court, said: "We have shown by the highest legal authority that the capital stock of a corporation is a trust fund for the security and benefit of the creditors of the corporation, and that the managing board fills the relation of trustee for its preservation and administration. Corporations, acting within the scope of corporate powers, fix no liability on their officers or any one else. They charge only the corporation. Hence the purpose and policy of requiring a capital stock as security and indemnity of persons who become its creditors. The law-making power confers upon them privileges—a franchise, a right to make contracts in its artificial name without fastening a liability on any natural person—and it exacts from them, as a condition on which it grants this franchise, this privilege and power, that they place a capital stock in safe pledge for the security of their creditors. And this capital stock is a permanent investment, with no power in the shareholder to withdraw it, until the corporation is wound up and all its debts paid, and no power in the managing board to permit it to be withdrawn at the expense of creditors. It is a trust fund in the corporation's treasury, to be used only in its interests, and whatever of profit or emolument it may yield belongs of right to the corporation, its creditors and shareholders. It must be kept within the corporation and under its control, to meet the purpose for which it was required to be raised and paid in. It is not materially unlike any other pledge that is placed as a guaranty of faithful performance of debt or duty. It is a fixed pledge until the debt is paid, or the duty performed."

In *Sturges* v. *Stetson,* 1 Biss. (U. S.), 246, 248, Mr. Justice McLean said: "The corporate powers of the company

were conferred for the express purpose of creating stock as a
means of constructing the railroad.  As well might the route for
the road designated be called a railroad, as to call the corporate
means of creating the stock stock.  *  *  *  Stock can be crea-
ted only by contract, whether it be in the simple form of a sub-
scription, or in any other mode.  There must be an agreement
to take the stock, and nothing short of this can create it.  This
imparts to the stock the quality of property, which before it
did not possess.  It is called 'capital stock' in the charter, because
the corporate capacity to create it is given.  The term 'stock,' as
used in the charter, before it is taken by subscription, means
nothing more than a power in the directors to receive subscrip-
tion for stock."

In *Sanger* v. *Upton,* 91 U. S. 60, it is said:  "The capital
stock of an incorporated company is a fund set apart for the
payment of its debts.  It is a substitute for the personal liabil-
ity which subsists in private copartnerships.  When debts are
incurred, a contract arises with the creditors that it shall not be
withdrawn or applied, otherwise than upon their demands, until
such demands are satisfied.  The creditors have a lien upon it
in equity.  If diverted, they may follow it as far as it can be
traced, and subject it to the payment of their claims, except as
against holders who have taken it *bona fide* for a valuable con-
sideration and without notice.  It is publicly pledged to those
who deal with the corporation, for their security.  Unpaid stock
is as much a part of this pledge, and as much a part of the assets
of the company, as the cash which has been paid in upon it.
Creditors have the same right to look to it as to anything else,
and the same right to insist upon its payment as upon the pay-
ment of any other debt due to the company.  As regards credit-
ors, there is no distinction between such a demand and any
other asset which may form a part of the property and effects of
the corporation."

It is therefore evident that capital stock cannot include au-
thorized stock which has not been subscribed.  Such stock can-
not be an asset, and cannot be used for any purpose, and no
one is liable for it, the corporation or any one else.

The act of May 13, 1907, does not require all corporations
to pay the same fee, but fixes it according to the capital stock;

the greater the capital stock, the greater the fee. This difference is evidently based upon the business the corporation will be able to transact, the benefits it may receive, and upon the presumption that the larger the capital stock the larger the business the corporation will do. If this be not true, why not require all corporations to pay the same fee? Upon the theory suggested as to the basis upon which the fees are fixed, it is plain to be seen that the authorized but unsubscribed stock is not, but unpaid subscribed stock is, a part of the capital stock within the meaning of the act, and we so hold.

Appellant states in his complaint that "it was forced by the demand of the Secretary of the State to pay $3706 in fees when but $306 was demandable, being $3400 fees in excess of what was due from it under the terms of said act, and it made such payment under protest and with notice that it did so merely as a means of enjoying its right to do business within the State." But it does not state to whom it paid the fees. The presumption is that it paid them according to law into the treasury of the State, or, if to the Secretary of State, that he did so, the presumption being that he did his duty, the law requiring all such fees to be paid directly to the Treasurer of the State. Kirby's Digest, § § 3447-3449.

The appellant fails to state a cause of action against appellee.

Judgment affirmed.