### FOOTE v. GREILICK.

1. CORPORATIONS—MEETING OF STOCKHOLDERS—NOTICE—PROOF— EVIDENCE.

Though corporate records do not show due service of notice of an annual meeting of stockholders, the fact is presumed, and parol evidence of proper service is competent in support of the presumption.

2. SAME—PREFERRED STOCK—MAJORITY REQUIRED—STATUTES.

Seven hundred twenty-one shares is a sufficient majority of the capital stock to authorize the issuance of preferred stock of a corporation organized with an authorized capital of $10,000, of which 919 shares were issued and 120 shares of the issued stock subsequently repurchased by the corporation; as only 799 shares remained outstanding, and after deducting the 120 shares that were voted, 601 shares remained voting for the preferred stock, being a three-fourths majority. Act No. 232, Pub. Acts 1903.

3. SAME.

Section 2 of said act does not require a subscription of fifty per cent. of an intended increase in the capital stock of a corporation as increased, in order to warrant the adoption of the increase, but merely requires the subscription of half the increase in order to entitle the proceedings to record in the office of the secretary of State.

4. SAME.

The question whether defendant and other stock subscribers intended to make an unqualified or a preliminary subscription, to become binding when acted upon by the action of the corporation, was for the jury.

5. SAME—AMENDMENT OF ARTICLES—PREFERRED STOCK—VALIDITY.

Proceedings to amend the articles of incorporation by providing for $14,000 common, and $6,000 preferred stock, were not invalid on the ground that the issuance of an excessive amount of preferred stock was authorized, under the limitation of the statute providing that preferred stock shall not exceed two-thirds of the paid in capital (§ 35, Act No. 232, Pub Acts 1903); it appearing that the corporation never issued any such preferred stock, and no more than $3,000 was subscribed and that its total issued capital stock was $9,190, exclusive of subscriptions to the increased portion.

6. SAME.

The court erred in finding as a matter of law that defendant was liable upon his subscription to preferred stock on the alleged ground that he was a director and holder of stock that was represented at the stockholders' meeting at which proceedings were taken to issue the preferred stock, and was presumed to know of the certificate of increase filed with the secretary of State, where it was claimed in defense to the action that the defendant's subscription was conditional upon the entire amount of preferred stock being subscribed for and less than that amount was taken.

7. SAME—CONDITIONAL SUBSCRIPTION—ESTOPPEL.

It was a question for the jury whether the subscription was qualified as indicated by certain conditions contained in the resolution adopted at the meeting of stockholders, fixing a limit of 10 days for subscriptions, and defendant was estopped from setting up the qualification only in the event that it should be found that he knew of or acquiesced in the certificate showing such increase of stock, filed with the secretary of State, and it should be also found that claims accrued against the corporation after such filing in reliance on the facts shown by the said certificate.

8. SAME—BANKRUPTCY—TRUSTEE—ACTION.

The trustee in bankruptcy could sue for and collect valid subscriptions to stock of the bankrupt corporation.

Error to Grand Traverse; Mayne, J.  Submitted April 7, 1911.  (Docket No. 45.)  Decided September 29, 1911.

Assumpsit by William O. Foote, as trustee in bankruptcy of the estate of the Traverse City Motor Boat Company, against Clarence L. Greilick on a stock subscription.  A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Reversed.

*Smurthwaite & Alway*, for appellant.

*John W. Patchin*, for appellee.

OSTRANDER, C. J.  The plaintiff, a trustee in bankruptcy of the estate of the Traverse City Motor Boat Company, a corporation, and an adjudicated bankrupt, brought this action against one of its stockholders, who was also a director, upon an alleged subscription for stock. He defended in the circuit court upon the ground that said subscription was not a legal obligation against him, and has appealed from a directed verdict.  There is little dispute about the facts.

This corporation was organized in 1905 with an authorized capital of $10,000.  Only 919 shares of this stock were issued, and of these 120, issued to one Stanton, were not paid for in full by him.  These shares were purchased from him by the company; new certificates being issued to a trustee.  The company having become embarrassed for want of funds, its officers and directors determined that an increase of the capital stock to $20,000, of which $6,000 should be preferred stock and $14,000 common stock, would enable the company to pay its debts and furnish a small working capital.  They therefore arranged to submit the question of such increase to the stockholders at their next annual meeting, to be held on January 10, 1908, and this was done by the adoption of a resolution at a meeting of the board held on January 3, 1908.  Defendant participated in such action.  The first meeting of the

board at which the subject was discussed was held on December 13, 1907, and a committee was appointed to formulate a proposition for increasing the capital stock. The report of this committee was made to the board at a meeting held on January 3d, and action was then taken, and at the annual meeting held on January 10th the resolution was submitted to and carried by the stockholders; 721 shares being voted in favor of the increase. The subscription sued upon is as follows:

" It is hereby mutually understood by and between us, the undersigned, parties hereto, and the board of directors of the Traverse City Motor Boat Company, that we will take the number of shares of preferred stock in the Traverse City Motor Boat Company, incorporated with a capital stock of $20,000, divided into 1400 shares of common stock and 600 shares of preferred stock of ten dollars each, organized under the laws of the State of Michigan, as hereinafter set opposite our respective names.

"And we each one, severally, and for himself, or herself promise and agree to pay for each share the sum of ten dollars, in such manner and at such time or times and upon such terms and conditions as the stockholders or board of directors may prescribe.

"Dated at Traverse City, this —— day of January, 1908."

As this paper is not dated, we have had some difficulty in ascertaining when it was signed, but we understand plaintiff's claim to be that the directors were informed that it was necessary that the subscriptions to stock amount to $10,000, as a condition to the proposed increase, and that their first five subscriptions were made unconditionally, either prior to the action of the stockholders or before filing a certificate of such action with the secretary of State, which certificate bears date on January 23, 1908, and is as follows:

" Certificate of Increase of Capital Stock and Providing for Preferred Stock of the Traverse City Motor Boat Company. We, the undersigned, being the president, the secretary and a majority of the directors of the Traverse City Motor Boat Company, a corporation existing under the

provisions of Act No. 232 of the Public Acts of 1903, do hereby certify, as required by sections 2 and 35 of said act:

"That at a meeting of the stockholders of said corporation expressly called for the purpose of increasing its capital stock and providing for preferred stock, and held at the office of said company on the 10th day of January, A. D. 1908, it was resolved, by a vote of three-fourths of the capital stock of said corporation, that the capital stock be increased from ten thousand dollars to twenty thousand dollars, and that the articles of association be so amended as to provide for the preferred stock, and that the articles relating to capital stock be and the same are amended so as to read as follows, viz.:

"The capital stock of the corporation hereby organized, is the sum of twenty thousand dollars, of which fourteen thousand dollars shall be common stock, and six thousand dollars shall be preferred stock. The preferred stock shall be subject to redemption at par on the 1st day of January, A. D. 1911, and the holder shall be entitled to a dividend of 7 per cent. per annum, payable Jan. 1st in each year, which shall be cumulative and payable before any dividend shall be set apart or paid on the common stock. The preferred stockholders shall be entitled to vote for directors.

"The number of shares into which the capital stock is divided is two thousand of the par value of ten dollars each.

"We do further certify that the total amount of common stock, including such increase, subscribed, is nine thousand one hundred ninety dollars. The total amount of preferred stock subscribed is fifteen hundred dollars.

"The total amount of common stock, including such increase actually paid in, is the sum of nine thousand one hundred ninety dollars, of which no dollars of the increase has been paid in cash, and no dollars has been paid in other property.

"The amount of preferred stock actually paid in is the sum of no dollars.

"It was further resolved by the same vote that the value of, and the price at which such increase of the capital shall be subscribed and paid for by the stockholders be fixed at ten dollars per share, and the time and manner of subscription and payment for such increased stock shall be as follows:

"Subscriptions therefor shall be made within ten days from date; payment shall be made in cash within ten days after subscribing therefor and the directors of said corporation are authorized to sell, at not less than the price so fixed, any part of such increase not subscribed by the stockholders, after they have had a reasonable opportunity to make subscription of their proportionate shares thereof, and the directors may make provision for calling in and canceling the old and issuing new certificates of stock.

"In witness whereof we hereunto sign our names this 22nd day of January, A. D. 1908.

"GEORGE TARBUCK,
"LEON F. TITUS,
"GEO. H. CROSS,
        "Directors.
                "W. W. SMITH, President.
                "H. D. ALLEY, Secretary."

There seems to be no doubt that defendant signed this paper prior to January 10th, and that it was present at the meeting of the board held that day, and we cannot satisfy ourselves that it was not signed by this defendant and present at the board meeting held January 3d.

Counsel for defendant say:

(1) The action of the stockholders was illegal (*a*) for want of notice of the meeting; (*b*) for insufficient attendance.

(2) This subscription is at most a unilateral contract; the corporation never having signed nor accepted it.

(3) The subscription never was completed, and it was signed with the understanding that it was to be of no effect if $6,000 was not raised.

(4) It was never acted upon, but was abandoned because of the failure to obtain subscribers for the amount of $6,000.

**Notice of Annual Meeting.** The record of the meeting held does not show that notice was given, but there is evidence (not contradicted) that notices were mailed in compliance with the law. This was competent and therefore sufficient proof of the fact, which is ordinarily presumed

without proof. 1 Cook on Stock & Stockholders, § 600; *Id.*, §§ 137, 138, and note; 2 Cook on Stock & Stockholders, § 714, and notes. Furthermore, the defendant was present by his authorized representative, holding his proxy, and he cannot complain that notice was not given to others. 2 Cook on Stock & Stockholders, § 730; 1 Cook on Stock & Stockholders, § 599; *Stutz* v. *Handley* (C. C.), 41 Fed. 531; s. c., 139 U. S. 417 (11 Sup. Ct. 530); *Schenectady, etc., Plank Road Co.* v. *Thatcher*, 11 N. Y. 102.

Insufficient Attendance. The attempt to increase the capital stock was made by virtue of Act No. 232, Pub. Acts 1903. Under section 35, a vote of three-fourths of the stock is essential to an amendment providing for the issue of preferred stock. Under the original articles the issue of 1,000 shares was authorized. Only 919 shares were issued, and it is claimed that of these 120 had been repurchased by the company, and therefore were not outstanding at the time action was taken to amend the articles. There were 721 shares represented at the meeting, which were voted in favor of the increase, and these included the 120 shares, which, if deducted, would reduce the number of shares represented and so voted to 601, being less than three-fourths of the authorized stock. The plaintiff contends that the shares were issued and outstanding in the name of a trustee, and were entitled to be represented, whoever was the real *cestui que trust*. We are of the opinion that the stock outstanding at the time of the meeting, and not the amount of capital authorized, *i. e.*, fixed by the original articles, is the amount upon which the computation should be based. We have said that the record shows that 721 shares were represented and voted at the meeting in favor of the amendment. This was more than three-fourths of the stock that had been issued. If, however, the 120 shares should be treated as treasury stock not issued, these shares should be subtracted from the 919 shares, leaving 799 shares outstanding, of which 600 shares would have been three-

fourths; and, if 120 be subtracted from the 721 votes cast, there were still 601 votes left, which were enough to carry the measure. This leaves the case to turn on some of the other questions raised.

It is contended that it was necessary to have 50 per cent. of the full $20,000 subscribed before a valid increase of capital to that amount could be made, and that, to effect that, these subscriptions were made, *i. e.*, the defendant's and some others. If that is true, the transaction was in the nature of a preliminary subscription, which became binding when acted upon by the stockholders, directors, and officers in adopting the amendment and filing the statutory certificate with the secretary of State. We are of the opinion, however, that the nature of this subscription, the time when, and the circumstances under which, it was made, raised a question for the jury to determine whether it was so made and intended and acted upon. Section 2 does not require the subscription of 50 per cent. of the total capital as increased before the adoption of the proposition, but it does require that the certificate show such subscription, to make it eligible to record by the secretary of State. The certificate shows such subscription, but that is not of itself necessarily conclusive of the matter. If the proofs show it to have been a bona fide and unqualified subscription for the purpose named, which purpose was accordingly carried out, defendant would be liable.

The learned circuit judge was of the opinion that the proceedings to amend were void, upon the ground that the provision for issuing $6,000 preferred stock was for an excessive amount, being more than two-thirds of the capital stock (common) that had been paid in. In this we think him in error. Section 35 does not preclude such action, though it does prohibit the issue of preferred stock to an amount greater than two-thirds of the capital paid in. The company never issued any such stock, and there was at no time more than $3,000 subscribed, even if the conditional subscriptions be included.

He directed a verdict for the plaintiff, however, upon the ground that the defendant was a director and holder of stock, that such stock was represented and voted by proxy at the stockholders' meeting, that a committee had been appointed at that or another meeting to solicit stock, and that it acted and procured signatures, including those in question, including his own, five in number, aggregating $1,500 of preferred stock. It is clear that the defendant knew of the action of the board and the stockholders' meeting. He states that he was at the meeting of January 3d, and his stock was voted by his authority. Either before or afterwards, he became the first signer on the subscription for preferred stock to the amount of $500. But it is the claim of the defendant that the subscription was made as a tentative one, and that in the event of a failure to obtain purchasers for $6,000 of preferred stock the attempt to increase the capital stock should be abandoned.

We have seen that a subscription for additional stock was unnecessary to the action of the stockholders' meeting. The action of the stockholders contemplated a later subscription within 10 days and payment within 10 days, as it shows, and it is not impossible, as defendant claims, that the subscription was understood by all to be subject to that kind of an arrangement. If it was a qualified subscription, and defendant knew the contents of or acquiesced in the making and filing of the certificate, he would be estopped to deny his liability to those whose claims accrued after the filing thereof in reliance upon the increase of capital stock through such subscription. But we find no reason for saying that, because the subscription was made and the certificate was filed, the stockholders were therefore denied the right, as between themselves and the corporation, to insist upon the terms of the arrangement and the failure to carry the arrangement into effect, —to insist that their liability was wholly contingent. These are questions which should have been submitted to the jury.

We have no doubt of the right of the trustee in bankruptcy to sue for and collect any valid subscription, and we do not understand that an increase of capital must necessarily be all subscribed to bind subscribers. That depends upon their contracts. We think this discussion has covered the important questions in the case.

The judgment will be reversed, and a new trial directed.

BIRD, MOORE, MCALVAY, and BROOKE, JJ., concurred.