<hr />

## ROBERTS *v.* CHATWIN.

### Opinion delivered June 23, 1913.

1. CORPORATIONS—FOREIGN CORPORATIONS—REQUIREMENTS FOR DOING BUSINESS IN STATE—REPEAL OF FORMER STATUTES.—The act of May 13, 1907, Acts of 1907, p. 744, known as the Wingo act, prescribes a method different from the existing law for foreign corporations to enter the State for the purpose of doing business therein, and the act being a complete revision of all former laws, operates as a repeal of all prior laws on the subject. (Page 566.)

2. STATUTES—PARTIAL INVALIDITY—FOREIGN CORPORATIONS.—While a part of the act of May 13, 1907, p. 744, is void, insofar as it attempts to impose upon a foreign corporation, as a prerequisite to the right to do intrastate business in this State, the payment of fees based upon the whole of its capital stock, the portion of the act relating to acts required of foreign corporations to be done, in order to do business in the State, is valid. (Page 567.)

3. CONTRACTS—CONSIDERATION.—Where A. by contract gave B. the right to use a certain piece of property and a spur track thereon, when the railroad which controlled the spur withdrew the right to the use of the spur track, such withdrawal can not be said to constitute a failure of consideration, as B. still retains the right to use the property, which is a valuable consideration. (Page 569.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

*John W. Newman,* for appellant.

1. A foreign corporation engaged in business in this State can make no contract, nor bring suit on any contract made in the State until it has complied with the statute. Kirby's Dig., § § 832, 833; 77 Ark. 205. The assignee of a contract made by such a corporation without having complied with the law, stands in no better attitude than the corporation itself.

2. The use of the spur track was a vital part of the contract. Without it, appellant could do nothing. The obligations of the contract were mutual, and the deprivation of the use of the spur track releases appellant from liability. 65 Ark. 320, 324; 57 Ill. App. 659; 41 Ill. 470.

*Terry, Downie & Streepey,* for appellees.

1. It is not necessary to file any of the papers in the county clerk's office, the statutes relied on by appellant having been repealed by the Wingo act, by implication. Acts 1907, p. 744, § § 1, 2; 82 Ark. 302-306.

The act is clearly separable. 54 L. Ed. (U. S.) 423, 430.

2. The evidence sustains the verdict. 90 Ark. 512, 514; 96 Ark. 606, 608.

3. If the recovery by the intervener is proper, appellees are entitled to recover that amount from the appellant, under the terms of the contract sued on.

*Coleman & Lewis,* for intervener.

1. If the contracts were made in Louisiana, the domicile of the Chatwin Bros. Rip-Rap & Contracting Company, and there is no showing to the contrary, they were valid, whether the company complied with the laws of Arkansas or not, and are enforceable here. 95 Ark. 13. But, if the contract was made in this State and the statute not complied with, the corporation having assigned its contract with appellant to A. C. Chatwin and Samuel Chatwin, there is nothing in our statute to prevent them from bringing this suit. The statute applies to corporations, not individuals. 90 Pac. (Kan.) 765-6. 77 Ark. 205.

2. Appellant received all the rights and privileges called for under his contract. As to the use of the spur track, that was "subject to the rules and regulations of the St. Louis, Iron Mountain & Southern Railway Company."

McCulloch, C. J. A written contract was entered into on February 12, 1909, between the Big Rock Stone & Construction Company, a domestic corporation, and Chatwin Bros. Rip-Rap & Contracting Company, a foreign corporation, reciting that the former owned lands and was lessee of certain other lands fronting on the Arkansas River in Pulaski County, Arkansas, and that for a certain consideration named in the contract, it gave to the last-named corporation "the right to take sand from the Arkansas River and along and in front of the land embraced in the leases recited therein, and the exclusive right to load and store same at the point where the present sand plant is located, and at a point above the rock crusher." The contract also gave the last-named corporation "the right of ingress and egress into and over said land during the period covered by this contract," and "the right to carry on a sand business at the point where the sand plant is now located on said premises." The contract also contains the following clause:

"4th. The party of the second part shall have the right to use the spur tracks along the river bank for loading its cars, subject to the rules and regulations of the

St. Louis, Iron Mountain & Southern Railway Company, but in so doing, it shall not interfere with the loading, unloading, or moving of cars used by the party of the first part for quarrying or shipping its rock."

The consideration named in the contract was that the lessee should pay to the lessor the sum of $200 per annum, and that it should deliver to the lessor certain quantities of sand per month at specified prices. The contract was to continue in force from the date of its execution up to September 23, 1912, unless sooner terminated by agreement of parties.

The lessee, said Chatwin Bros. Rip-Rap & Contracting Company, did not take any steps in the performance of the contract, but by written contract entered into with appellant, Mord Roberts, on February 15, 1909, it assigned to appellant said contract with the Big Rock Stone & Construction Company in consideration of the undertaking on appellant's part to perform said contract and to pay to said Chatwin Bros Rip-Rap & Contracting Company certain sums per cubic yard for sand and gravel delivered under the contract with the Big Rock Stone & Construction Company, etc.

Appellant proceeded in the performance of the contract and delivered sand pursuant to the terms thereof, but in July, 1910, ceased performance of the contract.

On June 21, 1911, Chatwin Bros. Rip-Rap & Contracting Company assigned all its interest in the contract with appellant to appellees, A. G. Chatwin and Samuel Chatwin, and the latter instituted this action against appellant in the circuit court of Pulaski County to recover certain sums of money alleged to be due under the terms of the contract.

The Big Rock Stone & Construction Company intervened in the action, asserting a claim for the amount due it under the contract, and the cause was tried before the court sitting as a jury upon the claim of appellees, A. G. Chatwin and Samuel Chatwin, as plaintiffs, and the Big Rock Stone & Construction Company as intervener.

The court found from the testimony that appellant

was indebted to the plaintiffs in the sum of $834.58, and that the intervener was entitled to recover the sum of $364.52 from the plaintiffs under the contract. Therefore, judgment was rendered in favor of the plaintiffs for said sum of $834.58, and of that sum it was adjudged that the intervener recover said sum of $364.52. An appeal has been prosecuted from that judgment.

The first point made is, that the contract was void because the Chatwin Bros. Rip-Rap & Contracting Company was a foreign corporation which had not complied with the statute of this State, authorizing it to do business here at the time the contract was entered into.

The position of counsel for appellant is based upon the contention that the act of May 23, 1901 (Kirby's Digest, §§ 832, 833), which required foreign corporations, before doing business in the State, to file, both with the Secretary of State and with the county clerk of the county where business was to be transacted, a copy of its articles of incorporation, was then in force, and that that feature of the statute was not complied with.

The General Assembly of 1907 enacted a statute, approved May 13, 1907, known as the Wingo act, which prescribed a different method for foreign corporations to enter the State for the purpose of doing business, and, among other things, provided that the articles of incorporation should be filed only with the Secretary of State.

This act was a complete revision of the whole subject, and, if valid, operated as a repeal of all of the prior acts on the subject. *Western Union Telegraph Company* v. *State,* 82 Ark. 302.

The foreign corporation hereinbefore named complied with the Wingo act before it entered into the aforesaid contract with the Big Rock Stone & Construction Company, and before it attempted to do any business in this State, so far as the record in this case shows.

It is insisted, however, that the Supreme Court of the United States, in the case of *Ludwig* v. *Western Union Telegraph Company,* 216 U. S. 146, declared the Wingo act to be unconstitutional and void, and counsel for ap-

pellant argues that the latter act did not, therefore, repeal the former statute on the subject.

It is true that the Supreme Court of the United States held, in the case mentioned above, that the Wingo act was unconstitutional and void insofar as it attempted to impose upon a foreign corporation, as a prerequisite to its right to do intrastate business in this State, the payment of fees based upon the whole of its capital stock.

It does not follow from this that the whole act is void. Its validity was recognized by this court in the case of *London & Lancashire Fire Insurance Co.* v. *Ludwig,* 86 Ark. 581.

The first section of the Wingo act prescribed a new method for a foreign corporation to be admitted into the State by filing with the Secretary of State a copy of its articles of incorporation, etc., instead, as under the former statute, of filing both with the Secretary of State and the county clerk of the counties wherein business was to be transacted. In a subsequent section of the act a schedule of fees was prescribed, and this is the part of the act that the Supreme Court of the United States dealt with exclusively in passing on the question of the right of the State to impose fees based upon the whole of the capital stock of a foreign corporation.

Our conclusion is that the first section of the Wingo act is valid, and that a compliance with it authorizes a foreign corporation to make contracts in the State, and to bring suit in the courts of the State to enforce them.

Even under the former statute, the contract was not void. *Woolfort* v. *Dixie Cotton Oil Co.,* 77 Ark. 205.

This suit was not brought by the foreign corporation itself, and it is contended on behalf of appellees that, even if the prior statute was in force, as the contract had been assigned to appellees, A. G. and Samuel Chatwin, they have the right to maintain suit thereon. Inasmuch, however, as we are holding that the Wingo act, the terms of which the corporation complied with, is valid and was in force at the time the contract was entered into, it is unnecessary to discuss the question of the right of ap-

pellees to maintain this suit, even if tested by the prior statute.

This disposes of the question raised as to the right to maintain the suit.

It is conceded by counsel for appellant that the judgment is correct to the extent that appellees were permitted to recover the sum of $402.89, which was for liability accrued up to the time that appellant ceased performance of the contract; but it is contended that the judgment for the balance of $431.69 is not sustained by the testimony.

This contention is based upon section 4 of the original contract with the Big Rock Stone & Construction Company, which provides that the lessee "shall have the right to use the spur tracks along the river bank for loading its cars, subject to the rules and regulations of the St. Louis, Iron Mountain & Southern Railway Company."

The Big Rock Stone & Construction Company used a spur track running from the main line of the railway up to its rock crushing plant, and it also had a sand plant on this spur track with access to the river. It used the spur track for loading rock from the crusher and sand from this plant. Subsequently the railway company made a change in the track running to the plant of the Big Rock Stone & Construction Company, and after this change it discontinued the use of the main spur for loading sand at the sand plant, and refused to permit that to be done any longer. Appellant was, however, promised another spur for loading purposes if he would procure the right-of-way therefor.

It is insisted in this behalf that the contract was conditioned upon his right under section 4 to use this spur track, and that the whole consideration failed when his right to use this track was withdrawn.

We do not think, however, that that contention is sound, for a substantial privilege was granted to him aside from the use of this track, and his right to use it was, by express terms, made "subject to the rules and

regulations of the St. Louis, Iron Mountain & Southern Railway Company." The fact that the railway company saw fit to change its plans and withdraw the privilege of using this particular track for loading purposes did not absolve appellant from the performance of the contract.

Our conclusion is, therefore, that appellant was liable for the amount adjudged by the court, or, at least, that the evidence was sufficient to warrant the finding of the court as to liability to that extent.

The question of the right of the parties to contract with reference to taking sand from the bed of the Arkansas River is not presented, and we do not attempt to decide that question. Other valuable rights are conferred by this contract which were enjoyed by appellant, and the question of the right to take sand from the bed of the river has not been raised.

The judgment of the circuit court is therefore affirmed.