MISSOURI VALLEY GROCERY COMPANY, a Corporation, Respondent, v. THOMAS HALL, as Secretary of State of the State of North Dakota, Appellant.

(178 N. W. 193.)

**Corporations — "entire capital stock" in statute relating to vote to increase of capital stock means entire issued or subscribed stock.**

Subdivision 3 of § 4557, Comp. Laws of 1913, which requires a favorable vote of at least two thirds of the entire capital stock of a corporation to increase the capital stock, is construed and it is *held,* for reasons stated in the opinion, that the expression "entire capital stock" means the entire issued or subscribed stock, and not the entire authorized stock.

Opinion filed May 20, 1920.

Appeal from the District Court of Burleigh County, *Nuessle,* J. Affirmed.

*William Langer,* Attorney General, and *Grant L. Martin,* Assistant Attorney General, for appellant.

Capital stock is the entire sum agreed to be contributed to the enterprise whether paid in or not. 40 Ga. 98; 24 N. J. L. 195; 1 Words & Phrases, 562; Cooke v. Marshall, 43 Atl. 314.

*Sullivan & Sullivan,* for respondent.

The capital stock of a corporation is the money contributed by the corporators to the capital, and is usually represented by shares issued to subscribers to the stock on the initiation of the corporate enterprise. 10 Cyc. 364; Foote v. Creilick (Mich.) 132 N. W. 473; Stemple v. Bruin (Fla.) 49 So. 151; Tapscot v. Mexican Colo. River Land Co. (Cal.) 96 Pac. 271.

The general rule is that capital stock means a stock actually subscribed for and issued. Platt v. Munson, 17 Hun, 475; Carlington v. Gilbert, 17 N. Y. 489; Fisk v. Chicago, etc. R. Co. 36 How. Pr. 20; Green Point Sugar Co. v. Whiten, 69 N. Y. 328; Christianson v. Eno, 106 N. Y. 97; State v. St. Louis & S. F. R. Co. 105 Pac. 688.

BIRDZELL, J. This is an appeal from a judgment of the district court of Burleigh county awarding a peremptory writ of mandamus directed to the secretary of state, requiring him to file and record a

certificate of increase of the capital stock of the plaintiff and respond-
ent.  The plaintiff is a domestic corporation and, prior to the proceed-
ings looking toward the increase of its capital stock, its articles of in-
corporation provided that the amount of its capital stock should be
$250,000, divided into 2,500 shares of the par value of $100 each.  Of
this amount 1,250 shares were subscribed and issued.  Pursuant to §
4557, Comp. Laws 1913, a meeting of the stockholders was called and
held for the purpose of increasing the capital stock from $250,000 to
$500,000.  At this meeting were represented 1,205 shares of the cap-
ital stock or an amount largely in excess of two thirds of the stock
issued.  All of the stock represented at the meeting was voted in favor
of the proposed increase.  Thereafter, a certificate of increase, prop-
erly executed, was tendered to the defendant, together with the legal
costs and fees for filing.  The defendant, however, refused to file the
certificate on the ground that it did not show compliance by the corpora-
tion with subdivision 3 of § 4557, Comp. Laws 1913, which provides
as follows: "At least two thirds of the entire capital stock, except as
hereinbefore provided, must be represented by the vote in favor of the
increase or diminution thereof."  It is the contention of the appellant
that the expression "entire capital stock" contained in the above statute
means the entire *authorized* capital stock, whereas the respondent con-
tends that it means the entire *subscribed* or *issued* capital stock.

The term "capital stock" seems in itself to be an ambiguous expres-
sion, as it may, under varying circumstances, refer to entirely different
subjects of corporate ownership.  It may be used, for instance, as de-
scribing the property of the corporation in which its capital is invested,
and it may be used as referring to the actual stock which has been sub-
scribed or paid in, or as referring to the potential or authorized stock.
In a true sense, however, stock which is merely authorized has no real
existence until actually issued or subscribed.  See 14 C. J. §§ 499 to
504, inclusive.  The usual method according to which a corporation
acquires its business capital is by the sale of its stock; and as the stock
is issued it represents, in the hands of the shareholder, his interest in
the combined capital which the corporation employs in carrying on the
business.  The unsubscribed stock is not, in reality, *capital* stock of the
corporation, for the reason that it has not been employed for the pur-
pose of supplying capital.  It is only potential capital stock and does

not become so actually until disposed of by the corporation according to law. 14 C. J. 1552.

Since the term "capital stock," is ambiguous, the statute in which it occurs must be so construed as to give to it the meaning which the legislature had in mind in employing it. In ascertaining the legislative intention in this connection, reference will be made to various provisions of the Constitution and statutes which seem to bear upon the question.

Section 138 of the Constitution provides that the stock of a corporation shall not be increased except in pursuance of general law, nor without the consent of the *persons holding* the larger amount in value of the stock, which consent must be first obtained at a meeting held after sixty days' notice. It is plain that the Constitution contemplates representation only by the issued stock, because it provides for obtaining the consent of the persons holding the stock. Unsubscribed and unissued stock is, of course, not held by any person. By § 4543, Comp. Laws 1913, directors are precluded from reducing or increasing the capital stock except as specially provided by law. And § 4557, which provides the procedure for increasing and diminishing capital stock, in providing for notice of meeting and voting, takes into consideration only the stockholders. So it would seem that no power is conferred upon anyone to represent unsubscribed stock. Section 4543 limits the power of directors in creating debts to the "subscribed capital stock," and § 4559, which provides for issuing bonds, requires the favorable vote of "at least two thirds of the entire capital stock," the expression "entire capital stock" being identical with that found in subdivision 3 of § 4557, governing the increase of capital stock. It would thus seem that if the contention of the appellant in regard to the meaning of the expression is correct, no corporation could issue bonds unless two thirds or more of its stock were first subscribed. The only possible alternative would be that the directors could vote the unsubscribed stock, which would lay the actual stockholders open to the possibility of having a majority of the board of directors voting a bond issue against the wishes of an overwhelming majority of the stockholders. It is inconceivable that the legislature contemplated any such possibility.

The identical expression occurs also in § 4561, which provides for the amending of articles of incorporation, in § 4563, which provides

for the changing of the corporate name, and in § 4564, which provides a method of changing the corporate headquarters. But yet in each of the three sections last referred to it is provided that the written consent of the "holders of three fourths of the capital stock or members" shall be as effectual to authorize the amendment or change as if a meeting were called and held. If the contention of the appellant is correct, a meeting to accomplish any of these purposes would be ineffectual unless two thirds or more of the stock had been issued and subscribed. But yet by obtaining the written consent of the holders of three fourths of the capital stock, though less than two thirds were issued, the same ends could be accomplished. It would seem to be very apparent that in these instances "the entire capital stock" means the entire issued or subscribed capital stock, and that the desired amendments or changes could be effected either by a two-thirds vote of such stock at a meeting or by the written consent of three fourths of such stock without a meeting. It is clear that the two methods are regarded as equivalents. In view of § 138 of the Constitution, it would be impossible for the legislature to dispense with such a meeting for the purpose of increasing the stock or indebtedness;—this alone sufficiently accounts for the absence of a three-fourths consent provision as an equivalent of a two-thirds vote at a meeting in the sections regulating indebtedness and stock increases. That the legislature contemplated only the issued or subscribed stock in the statutes above mentioned becomes all the more apparent upon referring to other articles in the chapter dealing with corporations in general. Referring to the subjects of dissolution and assessments, for instance, two-thirds of the stockholders or members are authorized to vote a dissolution of the corporation. It would be strange, indeed, if two-thirds might vote a dissolution but yet lack the power to adopt a simple amendment to the articles of incorporation. And stock may be sold for nonpayment of an assessment and the corporation may become the purchaser. In this event, by § 4583, the remaining stock is alone considered for purposes of election and voting at stockholders' meetings.

The meaning which we thus deduce from the statute is in no wise altered by the qualifying word "entire." This can mean only that the basis for computation of the vote must be the entire stock rather than the stock which happens to be represented at the meeting. In other

words, if the entire issued or subscribed capital should be 4,500 shares, it would require the favorable vote of at least 3,000 to accomplish any purpose for which a two-thirds vote of the entire stock is required. Whereas, in the absence of the word "entire" in the governing statute, the two-thirds requirement might be computed upon the number of shares actually represented at the meeting.

While authorities directly in point seem to be lacking, the adjudicated cases cited below tend to sustain the interpretation of the statute which we have adopted. London & L. F. Ins. Co. v. Ludwig, 86 Ark. 581, 112 S. W. 197; Excelsior Water & Min. Co. v. Pierce, 90 Cal. 131, 140, 27 Pac. 44; Stemple v. Bruin, 57 Fla. 173, 49 So. 151; Foote v. Greilick, 166 Mich. 636, 132 N. W. 473, 476; Pratt v. Munson, 17 Hun, 475; Green Point Sugar Co. v. Whitin, 69 N. Y. 328, 338; Com. v. Lehigh Ave. R. Co. 129 Pa. 405, 408, 419, 5 L.R.A. 367, 18 Atl. 414, 498; Sturges v. Stetson, 1 Biss. 246, 248, Fed. Cas. No. 13,568.

It follows from what has been said that the judgment appealed from is correct and it is affirmed.

CHRISTIANSON, Ch. J., and ROBINSON, J., concur.

GRACE, J. I concur in the result.

BRONSON, J., disqualified, did not participate.