JOHN F. FITZGERALD *vs.* GUARANTY SECURITY CORPORATION.

Suffolk.    March 10, 1921. — June 3, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Equity Jurisdiction,* To rescind contract. *Corporation,* Sale of shares of stock. *Contract,* Validity, Rescission.

If a Massachusetts corporation enters into a scheme to sell shares of its capital stock far in excess of that which it has been authorized to issue, making contracts in writing whereby, upon receiving in several instalments certain sums, it would issue to those who had completed the specified payments shares of its preferred stock " fully paid and non-assessable, at and for the sum " specified, one with whom such a contract was made may rescind it by a bill in equity before all the required instalments are paid by him and may compel repayment of what he had paid to the corporation in accordance with its provisions.

A demand by the plaintiff is not a prerequisite to the bringing of the suit above described.

The contract above described, while illegal, is not *malum in se,* and the fact that the plaintiff was a party to it does not bar him from maintaining the suit.

BILL IN EQUITY, filed in the Superior Court on February 16, 1920, seeking, among other relief, to have the contract with the defendant, described below, cancelled and $300, which had been paid by the plaintiff to the defendant under its provisions, returned to him.

The contract was as follows:

" Subscription Agreement          No. 1179
.  Guaranty Security Corporation
" Agreement by and between the Guaranty Security Corporation, incorporated under the laws of Massachusetts, having its home office in Boston, Mass., and

Mr. John Fitzgerald
of                                         Boston, Mass.
hereinafter called the ' Subscriber.'

" Witnesseth: The said Guaranty Security Corporation agrees to sell to the subscriber and the subscriber agrees to purchase fifty shares of the preferred stock of the said Guaranty Security

Corporation of the par value of ten dollars ($10.) each, fully paid and non-assessable, at and for the sum of six hundred dollars ($600.00) payable as follows: One hundred and twenty dollars ($120.00), the receipt whereof is hereby acknowledged and the balance in installments of thirty dollars ($30.) or more on the 31st day of each month and every month thereafter, until the full purchase price has been paid.

" When the subscriber has made all of the payments above specified, the Guaranty Security Corporation agrees that it will deliver to said subscriber, or his or her heirs, or assigns, certificate or certificates of said preferred stock, so paid for, together with twenty (20) shares of the common stock.

" If the subscriber shall fail to pay any of said installments when due, and said default shall continue for at least thirty days, then and in such case the Guaranty Security Corporation may at its option, while such default continues, terminate this agreement and all rights of the subscriber, thereunder, but upon written request by the subscriber, within one week from the date of last failure, the Guaranty Security Corporation will grant reasonable extensions on payments in arrears, but such extensions, taken together, shall not exceed six months during the life of this contract.

"No statement nor condition not contained herein shall be binding upon either party hereto and no authority is given any salesman to make any alterations in this agreement.

" In witness whereof, the parties hereto have caused the same to be executed in duplicate and have thereto set their hands and seals this 31st day of May, 1919.

.Guaranty Security Corporation.
John F. Fitzgerald,
Subscriber.
10 Allen Street,
Boston, Mass.

Valid only when
countersigned by
J. Edward Donahue
Witness:

    Charles Pozzo,
        Salesman."

In the Superior Court the suit was referred to a master. Material findings of the master are described in the opinion. After a confirmation of the master's report, the suit was heard by *Wait*, J., by whose order a final decree was entered dismissing the bill with costs to the defendant. The plaintiff appealed.

*M. W. Breck*, for the plaintiff.

*G. W. Boland*, for the defendant.

JENNEY, J.   The Guaranty Security Corporation was organized on December 18, 1918, under the business corporation law of this Commonwealth with purposes of a broad nature which included a " general brokerage and financial business, transaction or operation commonly carried on or undertaken by capitalists, promoters, financiers, contractors, merchants, commission men and agents " and with the power to do almost everything which the ingenuity of the draftsman could conceive for the purpose of carrying out the stated purposes; " To form, promote, and assist financially or otherwise, corporations, syndicates, partnerships and associations of all kinds and to give any guarantee in connection therewith for the payment of money or for the performance of any obligation or undertaking." The stated powers also purported to authorize the sale, assignment, mortgage, and pledge of capital stock and bonds created by it or by any other corporation or corporations, and while it was the owner thereof, to exercise all the rights and privileges of ownership, including the right to vote on the stock.

The capital to be employed in this wide field was $100,000, divided into six thousand shares of non-voting preferred stock entitled to cumulative dividends, and four thousand shares of common stock, each of the par value of $10. Only four shares of common stock were subscribed for in the agreement of association. The articles of association, however, certified that all the authorized common stock was to be issued in payment for services which are stated to be " in promotion and procuring a business for the enterprise."

On April 3, 1919, the president, directors and treasurer of the corporation made a sworn return to the commissioner of corporations that four thousand shares of its common stock had been issued for services and expenses, and that six thousand shares of preferred stock were to be issued for cash in full, as distinguished

from payment by instalments. This certificate was made under the requirements of St. 1903, c. 437, § 14.

On March 14, 1919, at a meeting of the stockholders at which thirty-six hundred and sixty-one shares of common stock out of the four thousand shares authorized and issued were represented, it was voted to increase the capitalization to $1,000,000 by the issue of fifty-four thousand shares of preferred stock and thirty-six thousand shares of common stock in addition to that originally authorized. As appears in the article of amendment filed on April 3, 1919, with the Secretary of the Commonwealth, no preferred stock had, prior to April 2, 1919, been issued and the entire amount of common stock originally authorized had been issued for "services and expenses;" and the thirty-six thousand shares of common stock then provided for were to be issued for services and expenses which are thus stated: "Including underwriting expense and procuring further business for the corporation." This statement was inserted under the following direction in the printed blank: "Note: — State clearly the nature of such services and expenses."

The commissioner of corporations on June 28, 1919, approved another certificate of the issuance of capital stock made under the statute hereinbefore referred to, that on June 24, 1919, the directors had voted to issue eight thousand shares of capital stock in addition to that previously issued and certified, that no stock had been issued for cash payable by instalments; that six thousand shares of full paid preferred stock had already been issued for cash and forty thousand of full paid common stock had already been issued for services and expenses; and that eight thousand shares of preferred stock were to be issued to be paid in full by cash. The commissioner of corporations on October 15, 1919, approved a certificate (filed under statutory provisions hereinbefore referred to) reciting that the directors had voted to issue ten thousand more shares of preferred stock to be fully paid for in cash, and that the corporation had already issued fourteen thousand fully paid shares of preferred stock for cash.

At some time before May 31, 1919, the defendant had contracted with J. Edward Donahue and Company to "carry on a campaign for the sale of its stock." Donahue, called as a witness for the plaintiff, although he had the contract in his possession, refused

to produce it and it was not in evidence. One Pozzo, who formerly had been a waiter in a hotel in Boston but was then in the employ of J. Edward Donahue and Company as a salesman of the stock of the defendant corporation, solicited the plaintiff, who was then a waiter in the same hotel, to purchase stock of the defendant; and in part because of his endeavors a written agreement for said purchase was made by the plaintiff and the defendant through said Pozzo, who was authorized to deliver the contract to the plaintiff as that of the defendant.

When the contract with the plaintiff was made, the defendant was authorized to issue sixty thousand shares of preferred stock and had in fact issued six thousand fully paid shares of such stock. The contract did not provide for the issuance to the plaintiff of stock when it was fully paid for, or for its issuance to be paid for in instalments. It unequivocally purported to bind the defendant to sell to the plaintiff fifty shares of its preferred stock "fully paid and non-assessable, at and for the sum of $600" — a price above par — and upon payment therefor to give to him a bonus of common stock of the par value of $200. The plaintiff gave to the defendant $120 on execution of the contract and the remainder of the consideration was payable in equal instalments of $30, " until the full purchase price has been paid."

Between twelve thousand and fourteen thousand agreements similar to that made with the plaintiff were made by the defendant through J. Edward Donahue and Company under its contract with that concern. Altogether $1,000,000 was paid to the company under these agreements and the gross amount payable under them was about $2,250,000. The defendant was engaged in a general financial business making loans secured on collateral "such as warehouse receipts, bills of lading, et cetera, and also financed business concerns, especially automobile dealers."

The bill alleges that the defendant made false representations as to various matters, but the master finds that these allegations are not sustained. The defendant did not by demurrer or answer set up the defence that the plaintiff had a plain, adequate and complete remedy at law.

The narrow question involved is whether upon these facts the plaintiff is entitled to relief. When on May 31, 1919, the con-

tract was made, the defendant had voted to issue common stock of the par value of $400,000, being all the authorized stock of that kind, either for services "in promotion and procuring a business for the enterprise" or for services and expenses which were defined only as "Including underwriting expense and procuring further business for the corporation." Such stock of the par value of $40,000 had then been issued, and on or before June 28, 1919, it was all outstanding. No evidence was introduced explaining or amplifying the consideration for which this stock had been issued or proving or tending to prove that the corporation then or thereafter had any interest legal or equitable therein, or that it could then or thereafter deliver any of it to the plaintiff. The facts found, that $1,000,000 had been paid to the corporation, all of whose common stock was issued for services and whose authorized preferred stock was only $600,000, and that contracts, many thousands in number, had been made for the sale of its preferred stock to an amount largely in excess of that authorized, clearly indicate, and require a finding, that the defendant had entered into a scheme to sell stock, as distinguished from its issue, which stock never had been, and then could not be issued lawfully, and could only be authorized by a vote of a majority of all the outstanding stock with voting powers. St. 1903, c. 437, § 40. G. L. c. 156, § 41. No such authority existed when the bill was filed. It was a power conferred only upon the stockholders.

Stock which has been authorized has no validity until actually issued or subscribed for; it is not assets. *Spring Co.* v. *Knowlton,* 103 U. S. 49, 57. *Sturges* v. *Stetson,* 1 Biss. 246. *London & Lancashire Fire Ins. Co.* v. *Ludwig,* 86 Ark. 581, 586. *Stemple* v. *Bruin,* 57 Fla. 173. Stock which never has been authorized clearly has no greater standing.

The contract with the plaintiff was not a subscription for stock. On the facts found, the inference is irresistible that the corporation did not have the stock for sale, but on the contrary, by means of the contracts disclosed, engaged in a scheme to sell on an instalment plan stock never authorized, and which so far as it could properly be issued, could lawfully be put forth only when fully paid. The scheme involved purported sales far in excess of stock which the corporation could lawfully issue or sell.

Under these circumstances, the plaintiff is entitled to relief

because the contract was one which upon the disclosed facts the corporation had no right to make, and because it was a part of an unlawful scheme to get money under contracts for the sale by instalments of unissued, and hence non-existent, stock. *Dill* v. *Wareham,* 7 Met. 438. *New Castle Northern Railway* v. *Simpson,* 21 Fed. Rep. 533. See *Hotchkin* v. *Third National Bank of Syracuse,* 219 Mass. 234; *Thronson* v. *Universal Manuf. Co.* 164 Wis. 44. The agreement did not constitute a subscription to stock payable in instalments.

No demand was necessary before the bringing of the bill. *Dill* v. *Wareham, supra.* Although the plaintiff was a party to the transaction, the contract was not *malum in se,* and never was completely executed; hence he could rescind it and recover the money paid to the defendant who had done nothing under the contract. *Spring Co.* v. *Knowlton, supra. White* v. *Franklin Bank,* 22 Pick. 181. *Atlas Bank* v. *Nahant Bank,* 3 Met. 581, 585.

The decree dismissing the bill is reversed, and a decree with costs is to be entered for the cancellation of the agreement with an injunction forbidding the defendant from asserting any rights thereunder, and for the payment of $300 with interest from the filing of the bill.

*So ordered.*